**UNITED STATES of America,
Plaintiff,**

v.

**Julius SUMMEROUR, Defendant.**

**Cr. A. No. 42267.**

United States District Court
E. D. Michigan, S. D.

Feb. 15, 1968.

David E. Caplan, Asst. U. S. Atty., for plaintiff.

John D. O'Connell, Detroit, Mich., for defendant.

## ORDER DENYING MOTION TO SET BAIL PENDING APPEAL

TALBOT SMITH, District Judge.

We explore this problem in some detail because of the increasing importance it has assumed under the provisions of the relatively new Criminal Justice Act.[1] The situation is this: Criminal trial has been had, conducted either by assigned or retained counsel (in the case before us, retained counsel was employed) and jury verdict of guilty returned. The appeal is taken by newly-retained counsel. The record is combed at leisure for "error". A fruitful field is that of the instructions. It is always possible to frame an allegedly more accurate instruction than one actually given, or to assert, upon reflection, that certain instructions neither requested nor given were essential to the jury's proper understanding. The obstacle in all of this, of course, is Rule 30 of the Federal Criminal Rules,[2] designed specifically to avoid this kind of post-mortem. But this rule does not stand alone. Also found in the Criminal Rules is Rule 52(b) which provides that an appellate court may always note "plain error".

The above matters are squarely presented to this Court by reason of appellant's renewed motion to admit defendant to bail pending appeal. The ground now asserted (we have previously denied bail on several occasions because of defendant's attempt to intimidate a Government witness) is that the appeal is is not frivolous[3] but will clearly result in a reversal of defendant's conviction because of plain but unobjected-to errors in the instructions; hence he should be released on bail pending decision on appeal. Without relating this provision of the new Bail Reform Act to its companion provision that enlargement to bail will not be permitted if the Court finds (as we have done previously) that the defendant is a menace to society, we will consider the alleged worth of the appeal with respect to our criterion at this level, namely, frivolity.

Specifically, as noted, the alleged errors relate to the instructions. In view of the fact that the instructions were discussed at length with defendant's retained trial counsel, who was both mature and experienced, and no objections were made to those ultimately given, counsel retained for the appeal must of necessity rely on the plain error doctrine of Rule 52(b). If, indeed, plain error has been committed, it is a matter of concern to this Court as well as the Court of Appeals. On the other hand, it is clear that if the integrity of the jury trial process is to be maintained, the doctrine of plain error cannot be permitted to elevate a captious technicality to the level of error and beyond that to plain error so gross and obvious as to justify reversal.[4]

We need not here trace the historical development of the rules relating to error. Suffice to say that earlier harsh doctrines have given way to a more flexible treatment,[5] our present standards (as regards instructions in criminal trials) being stated by the aforementioned Rules of Criminal Procedure. Rule 30 provides, *inter alia,*

---

1. Pub.L. 88-455, Aug. 20, 1964, 78 Stat. 552 (Title 18, § 3006A).

2. Quoted hereinafter.

3. 18 U.S.C. § 3148 (Bail Reform Act) " * * * if it appears that an appeal is frivolous or taken for delay, the person may be ordered detained. * * * "

4. Orfield's discussion of Harmless Error and Plain Error under Rule 52 of his "Criminal Procedure under the Federal Rules" has been particularly informative and helpful.

5. See, 47 Col.L.R. 450 (1947). "The Harmless Error Rule Reviewed".

"* * * No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * *"

This rule, clearly stated, would seem to preclude an appellate court's consideration of alleged errors in instructions, not objected to, and it has been so held in many cases.[6] The theory here is that the matter of instructions is often bound up in counsel's trial strategy,[7] that the conduct of the case is peculiarly for the discretion of trial counsel, that it is unfair for the losing counsel to gamble on instructions by refraining from objection, all the while keeping an ace (of plain error) up his sleeve, or for other reasons all concerned essentially with the fair conduct of the trial and the prevention of second-guessing the result. The First Circuit[8] described the problem in these terms:

"In this court the defendant engages in the much too popular pastime of scutinizing [sic] the transcript and alleging possible errors that had not been noted before. We have, on a number of occasions, stated that we will not consider such matters unless the error was of great magnitude. See Lash v. United States, 1 Cir., 1955, 221 F.2d 237, cert. den. 350 U.S. 826, 76 S.Ct. 55, 100 L.Ed. 738. We would add that the presentation of routine, previously unobjected to matters, often not error at all, as if we had made no such announcement, unduly burdens the court and serves only to cast unmerited reflection upon trial counsel, who normally is in a better position to appraise the propriety and materiality of the conduct subsequently criticized, and presumably purposely did not object. It is also unfair to the court and the public generally if a defendant can have two bites at the cherry by saying nothing and then coming back and asking for a second chance."

The court concluded:

"We believe it high time that the bar realize that we mean what we say in this regard. 'Plain error' means precisely that, and 'exceptional circumstances' must in fact be exceptional. See Silber v. United States, 1962, 370 U.S. 717, 718, 82 S.Ct. 1287, 8 L.Ed.2d 798. Counsel's attempt to make plain error from any error that can be shown to be of a prejudicial character would make the rule almost meaningless. Error which is not prejudicial at all is not a ground for reversal even if objection has been fully noted. See F.R.Crim.P. 52(a)."

The plain error rule (F.R.Crim.P. 52(b))[9] does not in itself define what is, and what is not, plain error, save possibly by its reference to "substantial rights" which, in turn, lacks definition. For the content of plain error, then, we must turn to the cases. It is variously defined, as error that is of "great magnitude" *Dichner,* supra, that is "basic and highly prejudicial",[10] that is "plain and fundamental",[11] or an instruction that, in the words of our Circuit, "was so lacking in explanation of the offenses charged and their elements as to be fundamentally erroneous and inadequate",[12] or, con-

6. See Annotations to Federal Rules of Criminal Procedure, Rule 30.

7. Counsel often, for example, have asked this Court not to charge that a criminal defendant need not take the stand, on the theory that this merely invites the attention of the jury to his failure so to do. Plain error?

8. Dichner v. United States, 348 F.2d 167 (CA 1, 1965).

9. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

10. Cave v. United States, 159 F.2d 464, 469 (CA 8, 1947).

11. United States v. Bushwich Mills, 165 F.2d 198, 201 (CA 2, 1947).

12. United States v. Ramsey, 291 F.2d 737, 739 (CA 6, 1961), cert. den. 368 U.S. 899, 82 S.Ct. 177, 7 L.Ed.2d 94.

versely, in event of failure to charge, if such failure "constitutes a basic and highly prejudicial error". It must, moreover, be of sufficient magnitude to warrant an inference of a miscarriage of justice. Corey v. United States, 346 F.2d 65 (CA 1, 1965), cert. den. 382 U.S. 911, 86 S.Ct. 253, 15 L.Ed. 162.

The form of words used varies with the court, but the common thread running through all of the various statements of plain error is that of a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done. Obviously this is a large order. Of course, counsel can always argue that had an instruction been given (or not given) or certain evidence been received (or rejected) the result would have been different. This is the "for want of a nail, the shoe was lost, for want of a shoe the horse was lost, for want of a horse the rider was lost" and so forth, ultimately leading to the loss of the kingdom. This common (and commonplace) argument elevates every debatable issue to the high level of plain error which is clearly not the intent of the rules. How, then, may plain error be distinguished? What, in legal contemplation, is "fundamental"?

We first turn to the instructions as a body, the entire group. At the outset we are met by the axiom, repeated in countless cases, that "the court is not required to charge propositions of law, however well stated, unless the evidence before the jury justifies them".

■ Yet, as stated, the above is simply not true. We charge daily as to matters concerning which there is no "evidence" whatever, such as presumption of innocence. There are actually two kinds of charges: a) those basic to each and every criminal trial, namely, the elements of the offense charged, and the concepts involved in due process, such as burden of proof and presumption of innocence; and, b) those concerning the evidence adduced and the procedures followed in this particular trial. In the latter we are in the area of trial counsel's conduct of the case, the elements he wishes to stress and those he wishes to subordinate. On the other hand, the instructions described under (a) above, are, we believe, what are properly referred to as the fundamental, the basic charges, the omission of which (save by intelligent waiver) is plain error. The latter go to the minutae of the particular case, evidentiary or procedural, and these are the charges as to which counsel cannot remain silent when invited to object, to say nothing of participating in the formulation thereof, and then, on appeal, assert "plain error". It is but a short step, if indeed a step at all, from labelling such matters as "plain error", requiring reversal and remand, to trying the case *de novo*, as to which the Supreme Court, as far back as the turn of the century, was expressing itself clearly:

"While it is the duty of this court to review the action of subordinate courts, justice to those courts requires that their alleged errors should be called directly to their attention, and that their action should not be reversed upon questions which the astuteness of counsel in this court has evolved from the record. It is not the province of this court to retry these cases *de novo*." [13]

■ This is not to say that the charge of incompetence of trial counsel may not be raised in a proper case, but if required it should be made directly, on the basis of the whole record and not on isolated instructions, with accused counsel given a right to be heard, which is not normally the case when he is merely supplanted by other counsel and his conduct of the trial criticized in the appellate court.

The thoughts we have just stated were given more eloquent expression by the Ninth Circuit, in Benatar v. United States, 9 Cir., 209 F.2d 734, in which the Court held

"It is true that a 'fundamental' instruction should be given by the Court,

13. Robinson & Co. v. Belt, 187 U.S. 41, 50, 23 S.Ct. 16, 19, 47 L.Ed. 65 (1902).

regardless of a proper request or objection. But an instruction *that needs to be related to the facts at bar in order to be proper,* is not a 'fundamental' one. In the latter case, the following language in Screws v. United States, 1945, 325 U.S. 91, 107, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495, is apposite:

'It is true that no exception was taken to the trial court's charge. Normally we would under those circumstances not take note of the error. (Case cited.)'

"It is precisely to such special instructions, related to the particular facts of a given case, that Rule 30 of the Federal Rules of Criminal Procedure applies. If every failure to give such instructions is to constitute 'plain error', so as not to require a proper request or objection, we might as well jettison Rule 30 altogether.

"Nor should the application of the Rule be reserved for trivial and immaterial matters, where the error complained of would not be reversible anyway.

"This Rule tends to discourage an advocate from making cryptic objections to the Court's instructions, and then, if the verdict goes against him, relying upon the alleged error as a deprivation of his Constitutional rights. The Rules generally are designed to prevent counsel from holding his cards close to his vest.

"Rule 30 should not be whittled down to suit the individual inclinations of particular judges in particular cases. It has a salutary purpose, and should be honored more in the observance than in the breach." [All italics in original.]

In Silber v. United States, 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962) the Court holds that it has the power to notice a "plain error", though it is not assigned or specified, citing United Brotherhood of Carpenters, etc. v. United States, 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973 (1947). The *Brotherhood* case is instructive on the point we are considering. There the omitted instruc-

tion went to the elements of the crime ("they are entitled to have the jury instructed in accordance with the standards which Congress has prescribed") and the failure was analogized to the situation where "the Court fails to give the reasonable doubt instruction". It is in accordance with these standards that the broad statements of "obvious error" or errors which "otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings", United States v. Atkinson, 297 U.S. 157, 56 S. Ct. 391, 80 L.Ed. 555 (1936) quoted in *Silber,* supra, are to be construed. In *Atkinson,* we note, in passing, the "plain error" charged (and denied by the Court) related to an instruction which gave the jury two bases, not one, for returning a verdict for the policy holder in the particular insurance policy there under consideration.

■ We turn now to the specific instructions as to which plain error is claimed by the newly-retained appellate counsel.

I. Defendant alleges that the court erred in instructing the jury under Title 26, Section 5601(b) (2) that

"Presumptions: Whenever on trial for violation of subsection (a) (4) the defendant is shown to have been at the site or place where, and at the time when, the business of a distiller or rectifier was so engaged in or carried on, such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury * * * "

Defendant does not argue the validity of the statutory presumption, but that there was not a proper evidentiary foundation for such presumption.

Defendant argues that the only testimony which linked defendant to the premises in question put him there on May 5, 1966 and that no odor of mash was detected about the premises until June 3. Defendant further argues that there is nothing to support the existence of a still on the premises on May 5, 1966, the date on which defendant was seen,

other than the fact that a still was discovered there on June 3, 1966. This is a mere inference, defendant contends, and is insufficient as a basis for the application of the statutory presumption.

The core of defendant's argument is thus that the illegal use of the premises on May 5, 1966, when defendant was seen, can only be inferred from what was later discovered on June 3, 1966, and that no other evidence is available to support any illegal use in May.

The record discloses, however, that the jury had other evidence upon which to base a finding of the existence of the still on May 5, 1966.

1. Special Investigator Lonergan, an agent with eighteen years in the criminal enforcement of liquor laws (tr 8) testified that he examined the still and based upon his examination he had determined that it had been present on the premises for a period of at least six months prior to June 3, 1966. (Tr 22) (A period which obviously includes the date in May when the defendant was shown to be at the site.)

2. Two one gallon glass jugs and a "Pinesol" bottle (govnt ex. 3, 4, 5) all bearing defendant's fingerprints, were found in the still room, one of them being directly on top of the still. (Tr 25)

Thus it is clear that defendant is incorrect in his assumption that the jury had nothing more than the inference which they could draw from the fact of the discovery of the still on June 3, 1966, that it was in existence on the date defendant was at the still site. The jury had explicit testimony from an experienced investigator as to the length of time the still had been in existence which, if believed, would clearly establish a factual basis for the invocation of the presumption. In addition, three glass containers, all bearing fingerprints were found in the still room, one of them being on top of the still itself, which would tend to establish defendant's presence at the site during the time of the still's operation.

II. Defendant argues that the Court erred in failing to instruct the jury *sua sponte* that while they could draw legitimate inferences from established facts, they could not draw inferences or presumptions from other inferences.

■ The giving of the "knowingly and willfully" instruction as to the defendant's state of mind, combined with a failure to give an (unrequested) inference upon inference instruction resulted, argued the defendant, in plain error. The defendant is confusing two entirely separate issues. The "knowingly and willfully" instruction bears upon the state of mind of the defendant. It is given in order that the defendant will not be convicted for acts which have not been done with a willful knowledge, that is, acts done, for instance, through mere error.

■ This instruction explains one of the necessary elements of the crime to the jury. It merely defined, as the court must, the element of "knowingly and willfully" which must be found to be present before guilt can be established. It is a *state of mind* that is involved, which may not always be established by direct and positive testimony and which, therefore, may be inferred from facts and circumstances which are established beyond a reasonable doubt. This has nothing whatsoever to do with the establishment of any of the other necessary elements of the crime and the defendant distorts the charge to find such an interpretation. It is obvious that this instruction referred only to the requisite state of mind and nothing more.

The matter with which the defendant concerns himself in his claim of "plain error" has to do with evidentiary details, jugs commonly used in this illicit business for the transportation of the ultimate product, and similar matters. These elements were covered in part in the following language of the charges, although the whole charge must be read for the full coverage:

"A defendant is not to be convicted upon mere suspicion or conjecture." (Tr 158)

"Now it is your province as jurors to draw legitimate inferences from established facts, and to weigh probabilities from these established facts. Circumstances are never presumed. And each fact making up a chain of circumstances must be proven beyond a reasonable doubt, and if the prosecution fails to prove any one link making up the chain, the defendant ought not to be convicted." (Tr 159)

Thus, it is clear that the alleged errors are based upon a failure to look to the whole of the record and the charges as given.

■ A condition precedent to the existence of "plain error", of course, is the establishment of any error, whether harmless or prejudicial. We find, upon a consideration of the charge as a whole, in the light of the facts adduced, no error.

The motion for enlargement to bail is denied.

So ordered.