**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ronald COPPOLA, Defendant-Appellant.**
**No. 73–1170.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Aug. 14, 1973.
Decided Oct. 25, 1973.

Rehearing Denied Nov. 16, 1973.

---

883

Raymond J. Daniels, Providence, R. I. (John F. Cicilline, Providence, R. I., and Carroll Samara, Oklahoma City, Okl., on the brief), for defendant-appellant.

Jeff R. Laird, First Asst. U. S. Atty., Oklahoma City, Okl. (William R. Burkett, U. S. Atty., on the brief), for plaintiff-appellee.

Before HILL and SETH, Circuit Judges, and SMITH,* District Judge.

HILL, Circuit Judge.

Ronald Coppola was indicted for executing a scheme to defraud James Math-

* Honorable Talbot Smith, District of Michigan, sitting by designation.

is of horses having a value in excess of $5,000 in violation of 18 U.S.C. § 2314.[1] He subsequently was convicted by a jury in the Western District of Oklahoma and sentenced to the maximum penalty allowed.

The record discloses that Mathis was the manager of a registered quarterhorse .ranch near Norman, Oklahoma. In November, 1971, Louis Baccari induced Mathis through the use of interstate telephone calls to haul four quarterhorses from Norman to Providence, Rhode Island, for the express purpose of selling them. After hauling the horses to Providence, Mathis was introduced by Baccari to a man called "Ray Cianci", actually Coppola, who allegedly was the prospective buyer. After introductions, Mathis and Baccari proceeded to discuss a sale price and eventually agreed upon a price of $10,500 for three of the horses; Cianci then wrote out a countercheck for the agreed amount. After receiving the countercheck, Mathis left the three horses and returned to Oklahoma. Shortly thereafter he presented the countercheck for collection but was refused payment because no such account existed.

Mathis immediately notified authorities of the fraudulent scheme. Approximately a year later Baccari and Coppola were arrested and charged with inducing Mathis to use interstate commerce in the execution of a scheme to defraud Mathis of property having a value of over $5,000. Baccari pleaded guilty to this charge in the District of Rhode Island, and Coppola was found guilty in the Western District of Oklahoma of aiding and abetting[2] Baccari in the fraudulent scheme.

■ Coppola's first argument on appeal is that he was deprived of a fair trial by an impartial jury when the trial court instructed the jury at one place in the instructions that the government must establish each of the three essential elements of the offense charged by a *preponderance of the evidence* rather than *beyond a reasonable doubt.* Coppola argues that charging a jury on preponderance of evidence is plain error because it leaves the jury with the impression that the government's burden of proof is less than beyond a reasonable doubt.

Coppola's trial counsel did not object to this questioned instruction at the time it was given, nor did he mention this error in his motion for a new trial. Failure to timely object would normally preclude objection on appeal. F.R. Crim.P., Rule 30, 18 U.S.C. The one exception is when the improper instruction constitutes plain error because it seriously affects substantial rights of the accused. F.R.Crim.P., Rule 52(b), 18 U.S.C.; United States v. Nelson, 448 F.2d 1304 (10th Cir. 1971); Wright v. United States, 301 F.2d 412 (10th Cir. 1962).

Determining what constitutes plain error is no easy matter. As the United States Supreme Court has noted, defining plain or reversible error is an almost impossible task; it is something you know when you see it. Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L. Ed.2d 793 (1964). One of the clearest definitions we have found on the subject states that plain error is *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." United States v. Summerour, 279 F. Supp. 407, 410 (E.D.Mich.1968).

In deciding whether the instructions constitute plain error we will review the

---

1. 18 U.S.C. § 2314. Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in, or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more;

. . . .

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

2. 18 U.S.C. § 2.

instructions as a body rather than looking to one isolated sentence. Russell v. United States, 429 F.2d 237 (5th Cir. 1970); Bynum v. United States, 133 U.S.App.D.C. 4, 408 F.2d 1207 (1968), cert. denied, 394 U.S. 935, 89 S.Ct. 1211, 22 L.Ed.2d 466; United States v. Summerour, *supra*. In the court's charge, time and again it was stated that presumption of innocence continues until such time as the guilt of the defendant is shown to the jury's satisfaction beyond a reasonable doubt.[3] Shortly after the allegedly prejudicial instruction was given, while still speaking on the same subject, the trial court stated: "You of course may not find any Defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the Defendant participated in its commission." This instruction, along with the other reasonable doubt instructions, sufficiently clarifies any ambiguity raised by the "preponderance of evidence" instruction. As the jury was charged that they must consider the instructions as a whole rather than relying only on parts of them, we are convinced the inadvertent instruction was harmless error. United States v. Beyer, 426 F.2d 773 (2d Cir. 1970); *see* Scurry v. United States, 120 U.S.App.D.C. 374, 347 F.2d 468 (1965), cert. denied, 389 U.S. 883, 88 S.Ct. 139, 19 L.Ed.2d 179.

■ Appellant next asserts he was improperly indicted; that he was unable to prepare a proper defense because the indictment charged him solely as a principal although the prosecution proceeded and the court charged on the theory that he was an aider and abettor. This argument may be summarily refuted because the law does not require the aider and abettor statute to be specifically pleaded or that accused be charged with being an aider or abettor. United States v. Adams, 454 F.2d 1357 (7th Cir. 1972), cert. denied, 405 U.S. 1072, 92 S.Ct. 1523, 31 L.Ed.2d 805; United States v. Trollinger, 415 F.2d 527 (5th Cir. 1969). As appellant has made no showing that his defense was hindered by the prosecution's aiding and abetting theory we find no grounds for reversal.

■ Appellant also suggests his case was improperly tried because the judicial district of Oklahoma lacks both jurisdiction and venue to hear this case. His position is that all acts of inducement causing Mathis to travel from Oklahoma to Rhode Island with the

3. To the Indictment, the Defendant has entered a plea of not guilty, which casts upon the Government the burden of proving the essential allegations of the Indictment to your satisfaction beyond a reasonable doubt before you would be justified in returning a verdict of guilty as to the Defendant.

This presumption of innocence continues until such time as the guilt of the Defendant is shown to your satisfaction beyond a reasonable doubt, and if, upon a consideration of all the evidence, facts and circumstances in the case, you entertain a reasonable doubt of the guilt of the Defendant as to the crime charged against him, you must give him the benefit of that doubt and return a verdict of not guilty as to the Defendant.

A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that you would be willing to rely and act upon it unhesitatingly in the most important of your own affairs.

You are instructed that an intent to commit the crime set forth in the Indictment by the Defendant now on trial is an essential element of the crime charged, and the burden is upon the Government to establish such intent to your satisfaction beyond a reasonable doubt.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that before convicting a Defendant, the jury be satisfied of the Defendant's guilt beyond a reasonable doubt from all the evidence in the case.

You of course may not find any Defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the Defendant participated in its commission.

If you find from the evidence in this case and under these instructions beyond a reasonable doubt that the Defendant on trial is guilty of the crime charged against him in this case then you should find the Defendant guilty.

horses were perpetrated by Baccari while in the States of Rhode Island and New York, and as the acts of inducement were all performed outside Oklahoma, that judicial district lacks jurisdiction and venue to hear this case. We disagree, for under 18 U.S.C. § 3237(a) [4] it is clear that violation of § 2314 is a continuing offense which may be prosecuted in any district from which commerce moves. It necessarily follows that as the substantive crime was committed in Oklahoma, the crime for aiding and abetting may also be tried in that district. United States v. Jackson, 482 F.2d 1167 (10th Cir. 1973); United States v. Kilpatrick, 458 F.2d 864 (7th Cir. 1972).

■ Appellant also charges error in admitting into evidence "in-court" eyewitness identifications because they were tainted by improper pretrial law enforcement identification procedures. When Mathis reached Providence, Rhode Island, late in the afternoon of a dreary November day, he was briefly introduced to a "Ray Cianci". For approximately one hour Mathis and Baccari discussed sale prices of the horses while Cianci stood by about ten yards away; after this discussion Cianci gave Mathis the countercheck and Mathis then left for Oklahoma. Approximately a year later Mathis and David Ashford, an employee who had traveled with Mathis to Rhode Island, were shown six or seven photographs by the Federal Bureau of Investigation. Only Mathis identified Coppola as the man who was called Cianci. Approximately two months after viewing the photographs a lineup was conducted in Oklahoma City and this time both Mathis and Ashford identified Coppola as Cianci. At trial the prosecution was allowed over appellant's objection to ask Mathis and Ashford if they had identified Coppola at the lineup. Appellant's objection was that due to the great lapse of time between the original incident in November, 1971, and the showing of photographs approximately a year later, followed by a lineup two months later, there is a possibility that misidentification has resulted. Appellant suggests that since Mathis and Ashford were in the presence of Cianci at most one hour, since during most of that time Mathis was engaged in conversation with Baccari while Cianci stood by about ten yards away, and since this incident occurred late in the afternoon on a dark and dreary November day nearly a year before the identification took place, any identification of Coppola at the lineup probably resulted from reviewing the pictures rather than actually seeing him in Rhode Island.

We are aware that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminal suspects. Despite the hazards of initial identification by photographs, however, this procedure is still an effective tool in criminal law enforcement if the procedure followed is not so suggestive as to give rise to a substantial likelihood of misidentification. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). As our court has noted previously, to determine whether the identification procedures were impermissibly suggestive we must look to the totality of circumstances. United States v. Milano, 443 F.2d 1022 (10th Cir. 1971), cert. denied, 404 U.S. 943, 92 S.Ct. 294, 30 L.Ed.2d 258. The record discloses that during the hour Mathis and Coppola were together Mathis had several opportunities to observe Coppola closely. Baccari introduced Coppola to Mathis upon Mathis' arrival in Providence. Mathis turned over the horses to Coppola after the agreement was consummated, and he also handed appellant the registration papers. During all of these negotiations Coppola was usually no more than ten yards away from Mathis. Approximately a

---

4. Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves.

year later Mathis was shown the six or seven photographs by only one FBI agent. This agent merely asked Mathis to look at the pictures and decide if he had seen any of the men before. No record of the people involved in the photographs was discussed and there was no suggestion that one picture should be picked out over the others. It is apparent that Mathis identified Coppola from his own recollection and thus we find no impermissible suggestion in the government's use of photographs.

■ Appellant charges that Ashford's lineup identification was error because it resulted from viewing appellant's photograph which carried on it the inscription "Rhode Island". We reject this argument for several reasons. First, the inscription on the photograph was not likely to cause misidentification because Ashford had an excellent opportunity to observe Coppola in Rhode Island, and in all other respects the photo spread was lacking in the slightest hint of suggestibility. United States v. Faulkner, 447 F.2d 869 (9th Cir. 1971), cert. denied, 405 U.S. 926, 92 S.Ct. 974, 30 L.Ed.2d 798. Second, Ashford testified that he did not make an identification of appellant from the photograph; his identification first occurred at the lineup in Oklahoma City. Hence impermissible suggestibility does not arise in relation to Ashford.

■ Appellant's final argument is that he was denied effective assistance of counsel because the trial court refused to grant a continuance although counsel was employed by appellant only a few days before the trial. The facts indicate that at arraignment on November 2, 1971, appellant appeared with John Cicilline as his retained counsel. Cicilline filed numerous pre-trial motions on appellant's behalf, sat at the counsel table throughout the trial, and still continues as his counsel on appeal. Several days before the December 13, 1972, trial date appellant decided that he wanted another attorney to assist in the conduct of the trial, so Peter Zaccagnio was employed. Zaccagnio on the day of trial requested a continuance and further requested continuances throughout the trial. Appellant now asks our court to reverse his conviction because his trial counsel was not given sufficient time to prepare for the case; thus appellant was denied effective assistance of counsel. Our court in United States v. Davis, 436 F.2d 679 (10th Cir. 1971), was confronted with the identical problem and replied by stating:

> The Sixth Amendment guaranty that the accused in a criminal proceeding shall enjoy the right to have the assistance of counsel means effective assistance, as distinguished from bad faith, sham, mere pretense or want of opportunity for conference and preparation. (At 681).

Appellant was represented by Cicilline for approximately thirty days before the trial, and as indicated, such counsel had effectively filed pre-trial motions which benefitted both appellant and newly employed counsel. The record discloses that Zaccagnio worked with Cicilline during the trial and hence we fail to find from the record any indication that appellant was denied effective assistance of counsel. On the contrary, the record discloses that appellant enjoyed the services of able counsel; he was convicted on the strength of the government's case rather than counsel's lack of preparation. Goforth v. United States, 314 F.2d 868 (10th Cir. 1963), cert. denied, 374 U.S. 812, 83 S.Ct. 1703, 10 L.Ed.2d 1035.

This case is affirmed in all respects.