Debra Renee **PALMER**, Executrix of the Estate of Virginia Ruth Krueger, deceased, Plaintiff–Appellant,

v.

Richard R. **KRUEGER**, Executor of the Estate of William Ryan Krueger, deceased; and Beech Aircraft Corporation, a foreign corporation, Defendants–Appellees.

No. 88–1375.

United States Court of Appeals, Tenth Circuit.

March 5, 1990.

Rehearing Denied April 3, 1990.

Howard K. Berry, Jr. of Berry & Berry, Oklahoma City, Okl., for plaintiff-appellant.

Burton J. Johnson (Rocklin D. Lyons with him on the brief) of Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl., for defendant-appellee Richard R. Krueger.

B.J. Cooper (Gerard F. Pignato with him on the brief), Oklahoma City, Okl., for defendant-appellee Beech Aircraft Corp.

Before LOGAN, HENLEY * and ANDERSON, Circuit Judges.

HENLEY, Senior Circuit Judge.

Plaintiff-appellant, Debra Renee Palmer, executrix of the estate of Virginia Ruth Krueger, appeals from an order of the district court[1] denying her motion for a new trial following a wrongful death action. The court entered judgment for defendants-appellees, Richard R. Krueger, exec-

utor of the estate of William Ryan Krueger, and Beech Aircraft Corporation (Beech), after a jury returned a verdict in their favor on December 14, 1987. We affirm.

Jurisdiction in this action is based on diversity of citizenship of the parties. *See* 28 U.S.C. § 1332. Palmer—a Texas resident—first brought suit against Krueger—an Oklahoma resident—in an Oklahoma state court, at which time Krueger joined Beech—a Kansas corporation—by a third party petition. Palmer then dismissed her case in state court and refiled this action in federal court, naming both Beech and Krueger as defendants.

## I. FACTS

On the evening of July 1, 1983, Virginia Krueger and her husband, Bill—a licensed pilot—took off from the Woodring Airport at Enid, Oklahoma, in their Beech Bonanza A–36 airplane. Mr. Krueger piloted the plane. The evening was clear, with winds gusting from twenty to twenty-seven knots from the south. Bill Krueger had originally purchased the airplane to fly for pleasure, but later made use of it in a business which he and Mrs. Krueger owned jointly.

Less than two minutes after takeoff, Mr. Krueger radioed that he would be returning for a landing. The air traffic controller, Aleta Kinsaul, asked if Krueger was experiencing trouble. Mr. Krueger answered "negative." Upon its re-approach, Kinsaul observed the plane turn and disappear behind a row of trees in an apparent nosedive. Immediately thereafter, the plane crashed and exploded into flames some one thousand feet from the runway. Both of the Kruegers were killed, and the airplane was destroyed.

Debra Renee Palmer, daughter of Virginia Krueger, was plaintiff below in this wrongful death action, which arose from her mother's death in the airplane crash. Palmer asserted claims for negligence against the pilot's estate, and negligence

---

\* The Honorable J. Smith Henley, Senior United States Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. The Honorable Ralph G. Thompson, United States District Judge, Western District of Oklahoma.

and products liability against the aircraft manufacturer, Beech.

The executor of the pilot's estate—and son of Krueger, Richard R. Krueger—denied negligence and exclusive control of the airplane. He also asserted affirmative defenses of sudden emergency, assumption of the risk, unavoidable accident, and contributory negligence. Beech denied negligence and the presence of a defect at the time the airplane left its control. Beech also asserted the supervening negligence of the pilot and third parties over whom Beech had no control, as well as the defenses of misuse, assumption of the risk, and contributory negligence.

Plaintiff's expert testified at trial that he believed the airplane door was open when the crash occurred. Other testimony indicated the possibility of other kinds of mechanical difficulties causing the plane crash. No conclusive evidence was introduced as to the cause of the accident.

This lawsuit in large part is the unfortunate product of a dispute involving siblings by marriage.

## II. ISSUES

On appeal, Palmer contends that it was reversible error for the district court (1) to give instructions on unavoidable accident, assumption of risk, contributory negligence and sudden emergency; (2) to fail to give an instruction on res ipsa loquitur; (3) to refuse to allow plaintiff to cross-examine and introduce rebuttal evidence to counter defendant Krueger's testimony as to the source of tension between plaintiff and defendant families; and, finally, (4) to refuse to allow plaintiff to introduce evidence that defendant Beech had knowledge of other Beech aircraft door opening incidents.

## III. JURY INSTRUCTIONS

In a diversity action, the substance of instructions to the jury is a matter of state law, while the trial court's determination on whether to grant or deny such instructions is procedural and is a matter of federal law. *Farrell v. Klein Tools, Inc.*, 866 F.2d 1294, 1296 (10th Cir.

1989). A jury instruction need not contain particular wording, but must only convey a correct statement of the applicable law. *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1549 (10th Cir.1987).

Unless the district court committed error in connection with a certain instruction, we need not look for prejudice. If an erroneous instruction was made, however, we review the entire record to determine if prejudice has resulted. *See Wheeler v. John Deere Co.*, 862 F.2d 1404, 1411 (10th Cir.1988). When error occurs, we seek to determine if the jury was misled and whether it understood the issues placed before it for determination. *See Patty Precision Prods. v. Brown & Sharpe Mfg.*, 846 F.2d 1247, 1252 (10th Cir.1988). Finally, we always keep in mind the admonition of Federal Rule of Civil Procedure 61: "The Court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." *See also* 28 U.S.C. § 2111.

### A. Unavoidable Accident

We turn first to Palmer's contention that the unavoidable accident instruction constitutes reversible error. The trial judge instructed: "An unavoidable accident is one which occurs without negligence on the part of any person. If you find from the evidence in this case that the accident was unavoidable, then your verdict should be for the defendants."

Palmer first asserts that this instruction was outside the scope of the pretrial order and was prejudicial since it was a source of surprise. We find no showing that appellant objected at trial on the grounds that this instruction was outside the scope of the pretrial order. In order to preserve an issue for appeal, a party must specifically object and state the grounds for such objection. Fed.R.Civ.P. 51. In her brief, Palmer cites us to "Transcript, Vol. V, pp. 890, 893–895" as the pertinent pages dealing with her objection to the unavoidable accident instruction. However, we find no objection plainly stating that Palmer objected on the ground that it

was beyond the scope of the pretrial order. Although these pages do show Palmer objected to this instruction on the ground that it was not supported by the evidence, this is insufficient to preserve the pretrial order issue for appeal, unless plain error is involved. *Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259, 1274 (10th Cir.1988); C. Wright & A. Miller, Federal Practice and Procedure § 2554, at 647 & n. 71 (1971).

■ The trial judge has a great deal of discretion in determining whether to give instructions on defense theories which are outside the scope of the pretrial order. *See generally Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 455–58 (10th Cir.1982) (holding that district court did not abuse its discretion in giving instruction on issue that was not in pretrial order). In its order denying Palmer's motion for a new trial, the court stated that the issue of unavoidable accident was raised by the evidence, citing Federal Rule of Civil Procedure 15(b)[2]. If the judge determines that a particular instruction is warranted because it was tried by consent, it will not be deemed error later unless we determine that the trial judge committed an abuse of discretion. *See Hardin*, 691 F.2d at 458.

■ We find no such abuse here. There is no unfair surprise where a judge, after a jury trial involving negligence allegations against two defendants, allows the negligence question to go to the jury framed as an unavoidable accident instruction. On the contrary, where the ultimate issue is negligence, it is only going outside the pretrial order in a technical sense to raise the defense because this is only a different way of examining the negligence question. Since Palmer raised the issue of negligence, we see no plain error in the judge's determining that the issue was tried by consent.

Palmer next argues that under Oklahoma law there was no evidence to support an unavoidable accident instruction. The Oklahoma Supreme Court has recently elu-

cidated the unavoidable accident instruction in *Ankney v. Hall*, 764 P.2d 153 (Okla. 1988). In *Ankney* the court in cautionary language laid out several guidelines for the use of this instruction. Included among these is that an unavoidable accident instruction only be used where there is a "showing [of] some factor over which the parties had no control, or could not, except by the exercise of exceptional foresight, have predicted." *Id.* at 154 (quoting *Hayward v. Ginn*, 306 P.2d 320, 323–24 (Okla. 1957)).

Palmer points out that in its order denying a new trial the district court relied on the state court of appeals' opinion in *Ankney*, which was subsequently reversed by the Oklahoma Supreme Court. However, we do not believe the Oklahoma Supreme Court holding in *Ankney* compels us to find that the unavoidable accident instruction in the case at bar was error, since the facts at bar and those in *Ankney* are distinguishable. In *Ankney* the Oklahoma Supreme Court held the unavoidable accident instruction was error because in that case there was a presumption of negligence which stemmed from a driver crossing the center line of a highway, just prior to an automobile accident. Since a violation of the "Rules of the Road" constituted a presumption of negligence, the *Ankney* court determined it was error to instruct the jury on unavoidable accident.

In the facts at bar, we have no similar violation to trigger a concept such as negligence per se, and we do not find it beyond the scope of the evidence to conclude that the jury could find that the plane crash was unavoidable. We believe the district court in citing *Ankney* did so for the general proposition that in certain cases where evidence of a lack of control exists, such an instruction is permissible.

■ There is *some* evidence here of the occurrence of an absence of control. The very fact that the case involved a plane crash gives rise to the possibility that a

---

**2.** Rule 15(b), in pertinent part states that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the par-

ties, they shall be treated in all respects as if they had been raised in the pleadings."

loss of control occurred. In the circumstances, a better alternative might have been to omit the unavoidable accident instruction and we join the Oklahoma Supreme Court in advising caution in its use. *See id.*

In any event, no harm was done by the unavoidable accident instruction since the instruction simply required the jury to find, as it did in returning a verdict for defendants, a lack of negligence on the part of both Krueger and Beech. *See Teague v. United Truck Serv.*, 499 P.2d 380, 383 (Okla.1972).

### B. Assumption of Risk

Palmer also contends that it was error for the court to submit an assumption of risk instruction to the jury. The court instructed the jury as follows: "A person assumes the risk of injury resulting from the negligence of another if he or she voluntarily and unreasonably exposes himself or herself to injury with knowledge and appreciation of the danger and the risk involved."

■ Under the law of Oklahoma, the "touchstone" of the assumption of risk defense in a negligence action is "consent to harm and not heedlessness or indifference." *See Thomas v. Holliday*, 764 P.2d 165, 169 (Okla.1988). Also " 'knowledge of the danger is an essential of the defense of assumption of risk, and the doctrine does not apply unless the one alleged to have assumed the risk can be found to have known or to have been charged with knowledge of the danger.' " *Briscoe v. Oklahoma Natural Gas Co.*, 509 P.2d 126, 129 (Okla.1973) (quoting syllabus to *S.H. Kress & Co. v. Maddox*, 201 Okla. 190, 203 P.2d 706 (1949)). Because Krueger offers no justification in his brief for this instruction, and because we see no evidence from the record that Mrs. Krueger consented to harm or was aware of any particular danger, we find it was error to give this instruction to the jury as to appellee Krueger.

Beech *does* take issue with Palmer's challenge to the district court's assumption of risk instruction. However, for the same reasons articulated with regard to Krueger, we also find the defense inapplicable in the negligence action against Beech. If the argument is that Mrs. Krueger assumed the risk due to her ownership interest in the plane, as it appears to be, we have simply not been cited to any authority which would resolve this issue in Beech's favor.

■ We therefore see no basis for an assumption of risk instruction either as to Krueger or Beech as to the negligence claims. However, we cannot say that these few lines in and of themselves had the effect of prejudice. Given the meager evidence which plaintiff offered at trial, we simply do not believe that this instruction misled the jury, or that another verdict would have been at all likely had this instruction been omitted. Thus, the error was harmless. *See* Fed.R.Civ.P. 61.[3]

### C. Contributory Negligence

Palmer argues that there is error in the following contributory negligence instruction which the trial judge delivered to the jury:

> Contributory negligence, as that term is used in these instructions, is the failure on the part of a person who suffers a loss to use ordinary care under the circumstances for his or her own safety at the time and place in question, which combines, cooperates, and concurs in some degree with the negligence of another and helps bring about the loss. You're instructed that the mere proof of an accident *or injury carries with it no* presumption of negligence or contributory negligence.

Palmer argues that as a matter of Oklahoma law there is no basis for imputing to Mrs. Krueger the negligent conduct of her husband, and no evidence at trial which

---

**3.** We note that this instruction spoke only in terms of negligence, and we therefore believe it was inapplicable to the products liability claim by Palmer against Beech. For this reason, we do not address the issue of the propriety of an assumption of risk instruction on these facts in a products liability action, but limit our review to the instruction vis-a-vis the negligence claims.

could support a finding of a lack of due care on Mrs. Krueger's part.

Appellee Krueger points out that Palmer did not object to the contributory negligence instruction at trial—a point conceded by Palmer—and therefore contends the objection on appeal to its inclusion in the jury charge should be waived. Unless there is plain error, appellee's point is well taken. *See Fiedler v. McKea Corp.*, 605 F.2d 542, 548 n. 4 (10th Cir.1979); Fed.R.Civ.P. 51. We have previously defined plain error as " 'fundamental error, something so basic, so prejudicial, so lacking in the elements that justice cannot have been done.' " *United States v. Coppola*, 486 F.2d 882, 884 (10th Cir.1973) (quoting *United States v. Summerour*, 279 F.Supp. 407, 410 (E.D. Mich.1968)), *cert. denied*, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974).

■ Krueger's argument that evidence does exist to support the contributory negligence instruction is based, as far as we can tell, on the fact that the Kruegers jointly owned the plane. The question then becomes: can ownership provide the basis for a factual finding of a lack of due care? Although we believe ownership is frail evidence of negligence, we find it constitutes "some" evidence, and this is what is required for a jury instruction. *See Tuttle v. City of Oklahoma City*, 728 F.2d 456, 459 (10th Cir.1984), *rev'd on other grounds*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

Beech's justification for the contributory negligence instruction also seems based on the ownership factor, as well as the theory that Mr. Krueger's alleged negligence could be imputed to Mrs. Krueger, thereby allowing the question to go to the jury that if it found Mr. Krueger negligent, then Mrs. Krueger would be deemed to have acted with less than due care *through* him. But this is not the way the jury instruction read, nor was this imputation theory explained to the jury.

However, we need not tarry with the imputation argument. It is enough to say that *some* evidence was introduced at trial which could support a finding of a lack of due care on the part of decedent Virginia Krueger. We believe Mrs. Krueger's ownership interest in the airplane, the nature of the crash, and the evidence introduced on the possible causes of the airplane crash, at least create a possible scenario under which Mrs. Krueger could be determined by a jury to have exercised less than due care in connection with the plane crash.

Even though the instruction be of arguable validity, due to the lack of objection at trial to this instruction, our standard of review is most deferential. We find the contributory negligence instruction does not constitute plain error.[4]

## D. Sudden Emergency

■ The trial court instructed the jury as follows as to the "sudden emergency" defense:

> One of the affirmative defenses asserted by the defendants is that the decedent, William Ryan Krueger, when [sic] confronted by what is known in law as a sudden emergency. In this regard you are instructed that where a person finds himself confronted with a sudden emergency, which was not brought about by his own negligence, such person has the legal right to do what appears to him at the time he should do to avoid injury, so long as he acts in a reasonably prudent manner as any other person would have done under like or similar circumstances, and if he does so act, he will not be deemed to have been negligent, even though it might afterwards be apparent that some other course of action would have been safer.

Here Palmer argues there was no basis for a sudden emergency instruction, since there was no evidence introduced at trial of a sudden perilous situation. However, no objection was lodged at trial. Therefore, once again, unless plain error is present,

---

**4.** It should be noted that appellee Krueger included in his brief a different part of the contributory negligence instruction than the one Palmer indicates is the source of her challenge. We review that portion of the jury instruction which the appellant raises, because we believe it is for the appellant to make assignments of error.

we will not consider an issue not properly preserved for appeal. *See Fiedler*, 605 F.2d at 548 n. 4.

The Oklahoma Supreme Court has held that a sudden emergency instruction is proper if there is *"any* competent evidence tending to establish that the sudden emergency was not brought about by negligence or want of care of the party asserting it as a defense." *Mitchell v. Hicks*, 471 P.2d 447, 448 (Okla.1970) (emphasis added).

We find enough evidence in the record, particularly in connection with Palmer's products liability cause of action against Beech, to support the notion that this accident could have occurred due to sudden emergency without negligence by Krueger. We therefore find no plain error here.

## IV. RES IPSA LOQUITUR

Palmer argues that the denial by the district court of her request for a res ipsa loquitur instruction was reversible error. The requested res ipsa loquitur instruction does not apply to appellee Beech, and Palmer so acknowledges.

The following instruction was requested, and denied, by the district court:

No. 17: You are further instructed that the falling of an aircraft, and crashing, creates an inference of negligence on the part of the decedent William Krueger if the aircraft is under the exclusive control or management of William Krueger and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care and it affords reasonable evidence of negligence in the absence of satisfactory evidence by the defendant explaining what occurred. However, before the defendant may be held liable in money damages for his negligence, it must appear from a preponderance of the evidence that the negligence was the proximate cause of the injury and damage, if any, sustained.

In denying Palmer's motion for a new trial, the district court stated that a res ipsa loquitur instruction "was improper in this case because there was no cogent evidence as to the cause of the airplane acci-

dent," citing *Stevens v. Barnard*, 512 F.2d 876, 880 (10th Cir.1975).

"Res ipsa loquitur cannot be invoked until, as a preliminary proposition, a plaintiff establishes *what caused* the accident." *Collins v. N–Ren Corp.*, 604 F.2d 659, 661 (10th Cir.1979) (emphasis added). In the case at bar, we do not know what caused the accident. In her complaint, Palmer alleged that Krueger was negligent in landing the airplane. Palmer also alleged—in her products liability claim—that Beech defectively designed the airplane; Palmer further alleged that Beech was negligent in its design of the door.

 It is clear that although several theories were advanced as to causation, what actually caused, or who was responsible for, the airplane crash remains a mystery. At a minimum, Palmer failed to show that it was more likely than not that Mr. Krueger's negligence was the cause of the accident. *See generally Federal Ins. Co. v. United States*, 538 F.2d 300, 303 (10th Cir.1976) (res ipsa loquitur applicable where it was shown that defendant's negligence was more probably than not the cause of fire). Moreover, the mere fact that an accident has occurred under mysterious circumstances is not enough to make res ipsa loquitur applicable. *See National Union Fire Ins. Co. v. Elliott*, 298 P.2d 448, 451 (Okla.1956).

In construing the law of Oklahoma, the following lines from *National Union Fire Ins. Co.* are particularly illuminating:

[W]hen the initial fact, namely what thing or instrumentality caused the accident has been shown, then, and not before, an inference arises that the injury or damage occurred by reason of the negligence of the party who had it under his exclusive control. The inference of negligence arising from the initially established fact compels the defendant, in order to relieve himself of liability, to move forward with his proof to rebut the inference of negligence.

*Id.* at 451.

In the instant case, it would appear that the district court found no "initially estab-

lished fact". We find no reason to disagree.

■ Res ipsa loquitur is used where the plaintiff cannot prove negligence, and the defendant can rebut it because of his particular situation. *See St. John's Hosp. & School of Nursing v. Chapman*, 434 P.2d 160, 166–67 (1967). Although Palmer seeks a res ipsa loquitur instruction, in her brief she specifically argues that "direct proof of causation is clearly beyond the means of anyone left alive." This cuts against Palmer, since res ipsa loquitur is particularly appropriate where the defendant should be in a position to rebut negligence. *Id.* Here, by the terms of Palmer's own brief, no one living is in such a position. This necessarily indicates that Krueger, as executor of his father's estate, is not able to rebut evidence of negligence any more than Palmer can establish negligence. We find no error in the district court's refusal to grant this instruction.

## V. REBUTTAL EVIDENCE

Palmer next argues that the court committed reversible error when it refused to allow her attorney to cross-examine and rebut Richard Krueger about the source of tension between the plaintiff and defendant families, following an exchange between Krueger and his counsel on direct examination of Krueger. Palmer acknowledges that as to appellee Beech, there is no contention of error on this issue.

Palmer argues that cross-examination and rebuttal are critical to her case, due to the importance of impeaching appellee Krueger. After a certain statement about the "morality" of the instant lawsuit was made, Palmer's counsel promptly objected. Objection was sustained, and the jury was admonished not to consider the statement. Later, Palmer's counsel made the following offer of proof:

> MR. BERRY: My offer of proof would be that she had employed Mr. Lee, or an attorney the same as Mr. Krueger, and that at some point Mr. Krueger was contending that the insurance money for the airplane was his by reason of the fact that the airplane had been left to him

under his father's will, and that during the course of that discussion Debby Duke [Debra Palmer] said that the airplane was in both parties' names and that, therefore, that's the way the insurance proceeds should be evenly divided, in which he made the remark to her that the reason it was put in both parties' names is because your mother probably nagged him into it, and therefore, from that point on is when this disharmony in the family arose.

We observe that the trial court, in denying the cross-examination of Krueger about this matter, stated that the fact that discussion of insurance coverage would result was particularly relevant to its determination. The court made the following statement explaining the basis for its ruling:

> I will recall, for the benefit of the record and anyone reviewing it, that in that explanation of my ruling I believed that under the evidence and in light of the issues in the case, the relationship or personal feelings between these individuals was of far less importance in determining the real issues in the case than the injection of the subject of insurance could possibly justify, and that the probative value, if there was any at all with regard to those matters, was so small, and the certainty of, in my judgment, the injection of the subject of insurance in this trial was so great that the probative value, if any, was dramatically outweighed by the undue prejudice that would have resulted if insurance had been brought into the case.
>
> Accordingly, I denied Mr. Berry that item of evidence, but I do think that, with your statement and mine now, that the subject has been adequately explained and is clear enough on the record so that anyone could evaluate it on appeal.

■ Evidence regarding the existence of an insurance liability policy is not admissible when such evidence goes to the issue of negligence. *See* Fed.R.Evid. 411. However, such evidence is admissible when other issues, such as ownership, control, bias, or prejudice are involved. *See id.*

Palmer contends that the insurance liability policy was essentially irrelevant to the lawsuit, other than to show that discord among family members began before this lawsuit was filed. She therefore argues that the right of cross-examination has been erroneously abridged.

The district court is permitted great discretion in the matter of regulating cross-examination, and we will not reverse unless we find an abuse of this discretion. *See Bragg v. Foretravel, Inc.*, 652 F.2d 39, 40 (10th Cir.1981). In addition, the process of balancing probative value of evidence against potential of prejudice is committed to the sound discretion of the trial judge. *United States v. Parker*, 604 F.2d 1327, 1329 (10th Cir.1979); Fed.R.Evid. 403. The trial judge is particularly well suited, with all the evidence from the trial before him or her, to perform this balancing process. *See Rigby v. Beech Aircraft Co.*, 548 F.2d 288, 293 (10th Cir.1977).

Our deference to the trial court is therefore substantial when it determines that evidence produced during cross-examination would feature a collateral issue with probative value outweighed by potential prejudicial effect. *See id.* Since Palmer's counsel indicated in his offer of proof that such cross-examination would bring to light information about an insurance liability policy, as well as the clear result that a collateral issue of family tension would thereby be raised once again, we find no reason to disturb the court's discretionary ruling.

## VI. BEECH SAFETY COMMUNIQUES

Finally, Palmer contends that it was reversible error for the trial court to refuse to allow her to introduce evidence that Beech had knowledge of other Beech aircraft door opening incidents. This issue on appeal relates only to appellee Beech.

Palmer's basic claim seems to be that she was improperly denied the right to have her expert comment on two safety related communiques which Beech issued post-accident in 1985 and 1987.

The district court determined, and the record clearly shows, that Palmer's rea-

son for attempting to have the evidence introduced went to the issue of notice to Beech of door opening incidents with Beech airplanes in the past. However, it is equally clear from the record that this issue was never in dispute, since evidence was previously brought in at trial through testimony by plaintiff's expert and by a plaintiff's exhibit about the same warnings which Beech gave about potential door openings in its Pilot's Manual. Since notice was not in dispute, the court properly excluded further testimony on this matter, stating it was "cumulative and potentially prejudicial and should be excluded under Federal Rule of Evidence 403."

For the reasons set out above, the judgment of the district court on all issues is affirmed.