**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John A. HENNING,
Defendant–Appellant.**

**No. 89–2126.**

United States Court of Appeals,
Tenth Circuit.

June 25, 1990.

Ann Steinmetz, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

William L. Lutz, U.S. Atty. (Tara C. Neda, Asst. U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before SEYMOUR, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and BRIMMER,* District Judge.

BRIMMER, District Judge.

John Henning was convicted after a jury trial in the United States District Court for the District of New Mexico of one count of possession with intent to distribute more than 20 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), two counts of carrying or using a firearm during and in relation to the drug trafficking offense charged in Count I in violation of 18 U.S.C. § 924(c)(1), and one count of possession of an unregistered firearm in violation of 26 U.S.C. §§ 5861(d) and 5871. On appeal, Henning raises three issues: (1) whether the trial court erred by denying his motion to suppress the methamphetamine and firearms as well as statements made in connection with the seizure of the physical evidence; (2) whether the trial court's failure to define "in relation to" regarding the counts for carrying or using a firearm during and in relation to a drug trafficking offense merits reversal; and (3) whether he can be convicted of two violations of 18 U.S.C. § 924(c)(1) for carrying or using two firearms during and in relation to only one underlying drug trafficking offense. Due to the Government's concession on the latter issue and because we agree, we affirm in part, vacate in part, and remand for resentencing on the firearms violation under § 924(c)(1).

## I.

On December 16, 1987, at approximately 2:42 a.m., Bernalillo County Sheriff's officers, who had been stationed across the street from a bar located on Isleta Boulevard in Albuquerque, New Mexico, investigating gang activity involving weapons and narcotics, heard a gunshot some 300 to 400 yards south of their position. Moments later, officer Bryan Murphy observed a yellow 1973 Chevrolet Suburban emerge from the general area of the gunshot, make "a real quick stop" at the stop sign at Isleta, and proceed north on Isleta. There was no other traffic in the area. He said, "That's it" and activated his overhead lights and siren and proceeded to pull the vehicle over. Seated in the front of the Suburban were Henning and a female, Lucinda De-Maria.

When Murphy asked Henning for his driver's license, Henning became abusive. Murphy had to again ask for the license before Henning held it out the window. When Murphy attempted to take the driver's license, Henning refused to release it. With two unsuccessful attempts, Murphy twice asked Henning to step out of the vehicle before he complied. As Henning opened the door, an automatic weapon fell to the ground. Murphy immediately drew his weapon, kicked the fallen weapon away and placed Henning's hands against the Suburban. A subsequent patdown revealed a semi-automatic pistol under his jacket. Henning was then placed under arrest for carrying a concealed weapon.[1] Both weapons, one of which Henning had converted to automatic capability, were fully loaded and readily accessible.

Incident to the arrest, a search of his person and the Suburban resulted in the seizure of seven baggies of methamphetamine weighing 7.58 grams from Henning's shirt pocket and one baggie containing 12.54 grams of methamphetamine, along with 59 empty baggies, inside a shaving kit within a blue denim athletic bag. Officers also found a loaded .22 calibre

---

* The Honorable Clarence A. Brimmer, Chief Judge, United States District Court for the District of Wyoming, sitting by designation.

1. In New Mexico a concealed weapon may be lawfully carried in a vehicle for protection. N.M.Stat.Ann. § 30-7-2 (Supp.1989). However, once outside the vehicle, a person may not legally carry a concealed weapon on his person. *Id.*

rifle on the front seat floorboard, a .22 calibre Reuger pistol inside a black bag, and 9mm ammunition, the same calibre ammunition as used in the previous two automatic weapons. During the booking process, a brown vial containing less than a gram of methamphetamine was found in Henning's breast pocket, along with two straws, thirteen Valium pills, and $360.00 in 20–dollar denominations.

Henning filed a motion to suppress the physical evidence seized and all statements made in connection therewith, contending that the initial stop was not supported by probable cause, that no probable cause or reasonable suspicion existed for the arrest, and that no probable cause existed for the search of the Suburban. Rec.Vol. I, doc. 8, at 3. He states he gave no consent for the search and that the seizure was neither part of a lawful inventory search nor amenable to the inevitable discovery doctrine. *Id.* While the evidence seized may not have been in plain view, says Henning, it was not "obviously contraband or instrumentalities of a crime." *Id.* at 4. As for the evidence found in his pockets, Henning argues that the items were improperly removed because nothing recovered could have harmed the officers. A suppression hearing was held on February 1, 1989 and the trial court denied the motion to suppress, setting forth its reasons:

I find there was certainly reasonable reason on the part of the police officers to have stopped the car. Once they stopped it, for their own protection, they had a right to ask him to exit the car based on his behavior. They also had a right to stop the car for speeding without the other incident of a shot being fired, and they had the right to ask him to step out of the car for their own protection. When he stepped out, and the rifle, or the automatic falls to the ground, certainly they had a right to pat him down, and when they patted him down, they found the other concealed weapon.

They arrested him at the time, the search and narcotics, other controlled substance, which resulted in a lawful arrest. He was read his Miranda rights, indicated he understood those, and then

spoke freely with the officers without ever asking for an attorney.

Rec.Vol. II at 88–89.

Following his conviction, Henning was sentenced to ten months imprisonment on the first count. As for the second and third counts, he was given consecutive sentences of ten years and five years, respectively. On the fourth count, the district court imposed a ten-month sentence to run concurrently with the sentence on the first count, for a total of fifteen years ten months imprisonment. This was to be followed by three years of supervised release. Rec.Vol. I, doc. 26.

## II.

The trial court's findings of fact relative to a denial of a motion to suppress must be accepted unless they are clearly erroneous. *United States v. Corral*, 899 F.2d 991, 993 (10th Cir.1990). All the evidence presented at the suppression hearing and the trial must be viewed in the light most favorable to the prevailing party. *United States v. Comosona*, 848 F.2d 1110, 1111 (10th Cir. 1988). Our review of the record of the suppression hearing convinces us that the trial judge acted appropriately in denying suppression of the physical evidence seized and any incriminating statements made in relation thereto.

In arguing that the initial stop was not supported by probable cause, Henning misstates the standard applicable to an investigative detention. All that is needed to support an investigative detention is reasonable suspicion. As we have said before: "[a]n investigative detention is justified where specific and articulable facts and rational inferences from those facts give rise to reasonable suspicion that a person has committed or is committing a crime." *United States v. Espinosa*, 782 F.2d 888, 890 (10th Cir.1986). The evidence here showed that Henning's vehicle emerged from the general area of an early morning gunshot heard by officers only seconds earlier, that the vehicle made a "California stop", rec. vol. II at 58, and then proceeded away from the scene in

excess of the posted speed limit. There was no other traffic in the area. Trained law enforcement officers could not reasonably be expected to simply stand by and ignore the potential significance such a fact pattern presents, believing, as they did, that they themselves might have been the targets of the gunfire. After all, only a few months earlier, this area was the scene of a drug-related homicide. Rec.Vol. II at 77. Under these circumstances, the district judge properly found the initial stop justifiable.

■ With the vehicle stopped, Murphy's attempts at obtaining further information by asking to see Henning's driver's license were met with belligerence and abusive language. Unable to see Henning's right hand, Murphy asked Henning to step out of his vehicle. Considering the "inordinate risk confronting an officer as he approaches a person seated in an automobile[,]" the intrusion upon Henning's personal liberty at this point was de minimis. *Pennsylvania v. Mimms*, 434 U.S. 106, 110, 111, 98 S.Ct. 330, 333, 334, 54 L.Ed.2d 331 (1977).

■ While it seems to us too plain to require comment, the instant the machine gun fell to the ground as Henning exited the vehicle, police officers were justified in performing a patdown search for their own protection and acted reasonably in doing so. *See, e.g.*, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Santillanes*, 848 F.2d 1103, 1108 (10th Cir.1988). The presence of one firearm, especially a fully automatic weapon, certainly provides a law enforcement officer with a reasonable belief that the person being briefly detained may be carrying other deadly weapons. *Santillanes*, 848 F.2d at 1108.

■ Once the patdown disclosed the presence of a loaded, concealed weapon, there was probable cause to arrest Henning for carrying a concealed weapon in violation of N.M.Stat.Ann. § 30-7-2 (1978). The fact that this charge was never listed on any police report, rec. vol. III at 107, is of no consequence since a higher charge took its place. Henning argues that he

was in compliance with § 30-7-2 until the time Murphy asked him to exit the vehicle. In effect, says Henning, it was the officer who forced him to violate the state's deadly weapon statute. We believe Henning foreclosed his options by his belligerent behavior, leaving the officer no choice but to ask that he step out of his vehicle.

■ The subsequent search of Henning's vehicle was incident to a lawful arrest. In *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981), the Court held that such a search extends to the entire passenger compartment of a vehicle. Where, as here, the vehicle contains no trunk, the entire inside of the vehicle constitutes the passenger compartment and may be lawfully searched. Incident to the arrest, police may lawfully complete their search of a person as well. We agree with the district judge that the search which ensued comported with constitutional standards.

■ Finally, Henning sought to have certain statements made at the scene suppressed, presumably based upon an alleged illegal arrest. Our ruling on the arrest precludes this argument. The statement of particular concern appears to be Henning's admission that he converted the fallen machine gun from a semi-automatic weapon into a fully automatic one. Suffice it to say that the testimony at trial showed that Henning was read his *Miranda* rights after the weapon was found concealed in a holster underneath his jacket and that he indicated to Murphy that he understood those rights. The statements he complains of were made after he indicated an understanding of his rights. Rec.Vol. III at 52–54.

### III.

Henning's next claim of error is directed at the district judge's failure to define "in relation to" in the jury instructions dealing with the second and third counts regarding firearms carried or used during and in relation to a drug trafficking offense. Through this omission, Henning says the judge removed from the jurors' considera-

tion an essential mens rea element of the crime charged. Since Henning did not object to the court's failure to give such an instruction during the trial[2], our review is under the plain error standard. Plain error is " '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " *United States v. Coppola*, 486 F.2d 882, 884 (10th Cir.1973), *cert. denied*, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974) (quoting *United States v. Summerour*, 279 F.Supp. 407, 410 (E.D.Mich.1968) (emphasis in original)).

■ The court's instructions 14 and 16 consisted of a reading of the second and third counts and, in each case, the penalty provision under 18 U.S.C. § 924(c)(1). Rec. Vol. I, doc. 20. Three other pertinent instructions were given:

### INSTRUCTION NO. 15

As to Count II of the indictment, the government must prove beyond a reasonable doubt each of the following essential elements:

FIRST: The defendant John A. Henning did possess with the intent to distribute a controlled substance, to-wit: methamphetamine;

SECOND: During and in relation to the possession with intent to distribute the methamphetamine John A. Henning knowingly used or carried a Heckler and Koch, Model 94, 9mm machinegun, Serial No. 1251;

THIRD: This act occurred on or about December 16, 1987, near Albuquerque, in the state and district of New Mexico.

As stated before, the burden is always on the prosecution to prove beyond a reasonable doubt every essential element of the crimes charged. The law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

Rec.Vol. I, doc. 20. Instruction 17 was identical to instruction 15 in all respects except that it dealt with the weapons charge in the third count. *Id.* The following instruction was also given:

### INSTRUCTION NO. 18

With reference to Counts II and III, the term 'carries' means possession with the ability to exercise dominion and control of such proximity to make it available for use. 'Carries' does not mean mere transportation of a firearm in a vehicle.

The term 'use' includes use for security regardless of whether the weapons are ever referred to, displayed, pointed or fired. If a firearm plays any role in a drug trafficking crime or if it facilitates the crime in any way, it is being used within the meaning of 18 U.S.C. § 924(c)(1).

Rec.Vol. I, doc. 20.

The failure to instruct separately on the meaning of "in relation to" did not exclude an essential element under § 924(c)(1) from the jury's consideration. The legislative history of this section was analyzed in *United States v. Stewart,* 779 F.2d 538 (9th Cir.1985), *cert. denied*, 484 U.S. 867, 108 S.Ct. 192, 98 L.Ed.2d 144 (1987). In 1984, the phrase "during and in relation to" was substituted for "during" in § 924(c)(1). Circuit Judge (now Justice) Kennedy then reasoned that this substitution was not intended to create a new element of the crime but rather to clarify that a person could not be prosecuted under § 924(c) for an unrelated crime committed while in possession of a firearm. *Id.* at 539 (citing S.Rep. No. 225, 98th Cong., 1st Sess. 312–14 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3490–92). As observed in *Stewart*, 779 F.2d at 540:

---

**2.** Henning did submit a set of amended and additional instructions wherein is included instruction R which stated: "Defendant's use of a firearm must be an integral part of the drug trafficking in order to convict him of using a firearm during the commission of that crime." Rec.Vol. I, doc. 18. The court did not give this instruction and defense counsel did not raise an objection at the instruction conference. This instruction was adequately covered by the court's instruction 18, set out in the body of this opinion. There is *no proposed instruction* defining "in relation to" in the record.

If the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred, then there is a violation of the statute.

Henning took the stand at his trial and testified that his purpose in carrying the machine gun and other weapons was for target practice during an upcoming camping trip. Rec.Vol. III at 267, 278. Detective Dennis Yurcisin, a 12–year veteran of the Albuquerque police department with a prior stint with the Drug Enforcement Administration in Albuquerque, testified concerning the techniques used in purchasing and selling illicit controlled substances. Yurcisin gave four reasons that many drug traffickers carry firearms in conjunction with their illegal activities. These reasons were: (1) to protect their illegal merchandise because of its high street value; (2) to protect the cash generated from the drug sales; (3) as a contingent to avoid arrest or apprehension by law enforcement authorities; and (4) to intimidate the people they deal with through a show of force. Rec. Vol. III at 201. The jury considered this and other evidence, and any reasonable inferences to be drawn therefrom, and, not unreasonably, gave Yurcisin's testimony greater weight—not because of the trial judge's failure to define "in relation to" in the instructions packet.

The attorney for the United States, in his closing argument, emphasized several times that there had to be a relation between the possession with intent to distribute methamphetamine and the knowing use or carrying of a firearm. Rec.Vol. IV at 387–389. Henning's counsel herself argued against any sort of relationship when she described the defendant as carrying weapons because of his interest in hunting. Rec.Vol. IV at 398.

Henning relies upon *Stewart* as supporting reversal of his conviction. We do not agree. Stewart's conviction was reversed because "[t]he government ... did not attempt to link possession of the firearm with the underlying felony, and the district judge did not instruct the jury that a relation between the two is required." *Stewart*, 779 F.2d at 539. The Ninth Circuit has so recognized. *See United States v. Power*, 881 F.2d 733, 736 (9th Cir.1989). In Henning's case, the district judge properly instructed on the elements needed to secure a § 924(c)(1) conviction and the Government presented enough testimony from which a jury could reasonably find the requisite linkage and conclude or infer that the machine gun and the pistol were present not only to facilitate Henning's narcotics trafficking activities but also to prevent capture by authorities. We cannot conclude that the giving of an "in relation to" instruction would have had such an impact upon the jury that it would have reached a contrary result on the second and third counts. Considering the jury instructions as a whole, together with the evidence adduced at trial, the district judge's failure to give an "in relation to" instruction was not plain error.

## IV.

This leaves Henning's argument regarding the sentence he received for the second and third counts. At the time of his arrest in 1987, the penalty provision read, in pertinent part:

Whoever, during and in relation to any ... drug trafficking crime, [ ] including a drug trafficking crime, which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device, for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime ..., be sentenced to imprisonment for five years, and if the firearm is a machinegun, ... to imprisonment for ten years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for ten years, and if the

firearm is a machinegun, ... to imprisonment for twenty years....

18 U.S.C. § 924(c)(1). These terms of imprisonment run consecutive to the sentence imposed for the underlying drug trafficking offense.[3]

Henning contends, and the Government concedes, that he cannot be punished twice under § 924(c)(1) for one underlying felony. Section 924(c) is an enhancement statute enacted to punish those drug traffickers who choose to carry on their trade with the assistance of a firearm. Henning was convicted of one drug trafficking crime, to-wit: possession with intent to distribute methamphetamine on or about December 16, 1987. The Government charged two firearms counts under § 924(c)(1) and related both to the single drug trafficking offense.

In *United States v. Chalan*, 812 F.2d 1302 (10th Cir.1987), we addressed the imposition of multiple sentences under § 924(c). There, Chalan was convicted of one count of first degree murder in violation of 18 U.S.C. § 1111, one count of robbery in violation of 18 U.S.C. § 2111, and two counts of the use of a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c). Chalan contended that the imposition of two consecutive sentences on the firearms counts violated double jeopardy. We concluded that under the test of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the underlying crimes constituted a single offense and a single crime of violence under § 924(c). *Chalan*, 812 F.2d at 1317. Accordingly, we vacated one of the firearms convictions.

A similar result obtained in *United States v. Henry*, 878 F.2d 937 (6th Cir. 1989), where in spite of two underlying drug trafficking offenses, the Sixth Circuit vacated one of the two firearms convictions under § 924(c). This action came about because the indictment referenced both drug counts in each firearm count rather than linking one firearm to one drug count.

*Henry*, 878 F.2d at 943. Applying the reasoning in *Chalan* and *Henry*, we hold that where a defendant has been convicted of a single drug trafficking offense and more than one firearm was involved, a single violation of § 924(c)(1) occurs and multiple consecutive sentences may not be stacked to account for each firearm seized.

V.

In sum, for the reasons set forth above, we find that the district judge's denial of Henning's motion to suppress was not clearly erroneous and AFFIRM the same. We AFFIRM the conviction insofar as it relates to the judge's failure to give an "in relation to" instruction. Because Henning was convicted of only one underlying drug trafficking offense, we VACATE the sentences imposed on the second and third counts and REMAND for resentencing under § 924(c)(1) in accordance with this opinion.

---

**3.** Of worthy note, the penalties under § 924(c)(1) have increased significantly since 1987. Today, if the firearm is a machine gun, the mandatory consecutive sentence for a first-time conviction is twenty years. For subsequent convictions, a machine gun carries a mandatory consecutive life sentence without release. Most other firearms carry a mandatory consecutive twenty years imprisonment for subsequent convictions.