9 F.3d 118
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Leonard James TERNS, Defendant-Appellant.
 No. 92-5170.
 United States Court of Appeals, Tenth Circuit.
 Oct. 29, 1993.
 
 Before SEYMOUR and EBEL, Circuit Judges, and McWILLIAMS, Senior Circuit Judge.
 
 ORDER AND JUDGMENT[1]
 
 1
 In the first count of a two-count indictment, Leonard James Ternes was charged with taking by force, violence and intimidation $9,632 in currency from employees of the Bank of the Lakes, Bernice, Oklahoma, a federally insured bank, and that in committing the offense he assaulted and put in jeopardy the life of another person by the use of a firearm, in violation of 18 U.S.C. 2113(a) and 2113(d). In a second count, Ternes was charged with using and carrying a firearm during and in relation to a crime of violence for which he could be prosecuted in a court of the United States, in violation of 18 U.S.C. 924(c). A jury convicted Ternes on both counts and he was sentenced under count 1 to imprisonment for 78 months, and to a consecutive term of 60 months on count 2. He was also sentenced to a term of supervised release of 5 years on count 1, and a concurrent 3-year term of supervised release on count 2.
 
 
 2
 Prior to trial, Ternes filed a motion to suppress the use at trial of certain evidence, which motion, after hearing, was denied. The same motion was renewed just before trial and again denied.
 
 
 3
 On appeal, the only issue raised is whether the district court erred in denying Ternes' motion to suppress. Specifically, counsel argues that the initial stop of Ternes was unlawful and tainted all that followed, including the in-court identification of Ternes as the robber by two bank tellers, as well as his statements to the investigating officers. He also argues that the in-court identification of him as the robber by the two bank tellers was the result of improper and unduly suggestive conduct by the police. Finally, he argues that the statement he gave the police was in violation of his Sixth Amendment rights and that although the statement itself was not presented to the jury, the statement did lead the police to other evidence which was before the jury. Our study of the record leads us to conclude that the district court did not commit reversible error when it denied Ternes' motion to suppress.
 
 
 4
 On February 28, 1992, at about 1:10 p.m., two employees of the Bank of the Lakes in Bernice, Oklahoma were held up by an unmasked robber who escaped with $9,632 in currency.[2] The robber displayed a loaded revolver. A short time after the robbery and a short distance from the bank, Rick White, a deputy sheriff, stopped a vehicle being driven by Ternes' wife in which Ternes was a passenger. White recognized Ternes from a contact he had with him a few days before.[3] White told Ternes that the bank at Bernice had just been held up and that he matched the description of the robber given to the police by the victims. Ternes denied he was the perpetrator and said he wanted to be "cooperative" with the police. To establish his own innocence, Ternes consented to the police making a videotape of him which was thereafter shown the victims. However, Ternes' desire to "cooperate" backfired. The victims identified the videotape as portraying the robber. Additionally, Ternes agreed to go to the scene of the crime where he was again identified by the victims as being their assailant.
 
 
 5
 Ternes' initial argument is that the motion to suppress should have been granted, because Rick White's stopping of the vehicle driven by his wife and in which he was a passenger was unlawful and tainted everything that happened thereafter. Wong Sun v. United States, 371 U.S. 471, 487-88 (1963). We do not agree. Our study of the record convinces us that Rick White had a "reasonable suspicion" which permitted a temporary detention and questioning of Ternes. Terry v. Ohio, 392 U.S. 1, 2 (1968); United States v. Henning, 906 F.2d 1392, 1395 (10th Cir.1990). Rick White knew that the bank had just been robbed and he felt that the description of the robber as given by the victims fit Ternes. And, importantly, White was acquainted with Ternes. As indicated, a few days prior to the robbery, White had investigated a citizen's complaint that Ternes and his two stepsons had been shooting. Further, White noticed two cars at the scene of the grandparents' residence, one of which fit a description of the car driven by the robber. All things considered, the initial stop was not unlawful. And it should be remembered that, according to the arresting officers, Ternes' immediate response was that he had done no wrong and wanted to "cooperate" and consented to the videotape and later agreed to accompany the officers to the bank, where, as mentioned, he was identified by the bank tellers as being the robber.
 
 
 6
 Ternes also argues that the in-court identification of him as being the bank robber by the two bank tellers was prompted by improper and suggestive conduct by the police. In this regard, he complains about the videotape taken of him by the police and shown the bank tellers. Again, it should be remembered that Ternes consented to the videotaping and apparently thought such would exonerate him. In so doing, he took a risk and simply lost. At trial, the two bank tellers identified Ternes as the robber.
 
 
 7
 Finally, Ternes argues that certain statements he later gave the police led them to evidence which was introduced at trial. As indicated, the government attorney, no doubt out of an abundance of caution, did not offer Ternes' statements at trial. There was a wig and a revolver which were introduced at trial, but as we understand it, the wig and revolver were discovered by Donny Reed, Ternes' stepson, and were not the result of any statement given the police by Ternes.[4] Ternes did direct the police to the money which was taken in the robbery. However, the government at trial did not introduce this money into evidence. The wig and revolver, however, were not found where the money was found and were only discovered by Donny Reed and his stepbrother after a further search. The wig and revolver, which had been buried, were then turned over to the police.
 
 
 8
 Judgment affirmed.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 It was stipulated that the Bank of the Lakes was insured by the Federal Deposit Insurance Corporation
 
 
 [3]
 Three days prior to February 28, 1992, Rick White had received a complaint that "shots were being fired after dark." On investigation of the complaint, White testified that he went to the "Pancake residence" where he talked to Ternes and his two stepchildren, Donny Reed, age 20, and Michael Robinette, age 18. The Pancakes were the maternal grandparents of Donny Reed and Michael Robinette. White testified that the three said they had been target shooting. White went on to testify that at the time of the investigation he noticed a dark brown on tan automobile with a missing front grill and Missouri license plates, and a 1984 dark yellow Ford parked at the Pancake residence
 
 
 [4]
 Although the victims did not recognize it, the robber was wearing a wig