**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 20 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JAMES EDWARD HICKS, JR.,

      Defendant-Appellant.

No. 98-5178
(D.C. No. 98-CR-06-001-K)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Chief Judge, **EBEL**, and **MURPHY**, Circuit Judges.

Defendant-Appellant James Edward Hicks appeals his conviction on federal armed robbery and weapons charges following a jury trial in the Northern District of Oklahoma. He argues on appeal that the district court erred in denying his motion to suppress statements and evidence. He also contends that certain accomplice testimony introduced against him at trial was obtained in violation of 18 U.S.C. § 201(c)(2). We affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# BACKGROUND

On November 30, 1997, at approximately 2:00 a.m., Officer Jenkins of the Tulsa Police was called to investigate a fight at a bar called the Brick House. While there, Jenkins heard a gunshot at an apartment complex near the Brick House parking lot, saw a crowd running in all directions, and a blue GM model car speeding away from the complex. The officer saw no other traffic in the area.

Jenkins requested assistance in pursuing the vehicle. He lost sight of the car for about 15 seconds, but then intercepted the vehicle as it re-entered the apartment complex. Jenkins and other officers stopped the car, pointed their guns, and had the occupants exit the car one by one, including the driver, defendant-appellant James Edward Hicks.

Hicks and the two passengers were handcuffed and detained. All three were patted down; police found approximately $500 in Hicks' jacket pocket, but no weapons on his person. The officers then searched the vehicle and discovered a mask, gloves, and a Crown Royal bag containing money. They also found a .38 caliber revolver in the map pocket of the driver's side door. Hicks then was arrested for transporting a loaded firearm and carrying a concealed weapon.

The police took Hicks and the two passengers to a police station, where they read Hicks his <u>Miranda</u> rights, and obtained a confession from him that he had been involved in the armed robbery of a Radio Shack the day before. After

obtaining Hicks' consent, the officers searched Hicks' residence and discovered a large amount of cash, bullets matching the .38 caliber gun, and a stolen camcorder.

On January 9, 1998, a federal grand jury returned a two-count indictment against Hicks, charging him with the armed robbery of a Radio Shack on November 29, 1997. On February 24, 1998, Hicks filed a motion to suppress evidence alleged to have been seized illegally and to suppress Hicks' statements to the police. On March 4, 1998, the grand jury returned a twelve-count superseding indictment, charging Hicks with five additional armed robberies committed in November 1997. On April 17, 1998, the district court denied Hicks' motion to suppress.

On May 20, 1998, Hicks was convicted by a jury in the Northern District of Oklahoma on all twelve armed robbery and weapons charges.[1] On September 14, 1998, he was sentenced to 1,350 months' imprisonment, 3 years' supervised release, and restitution. Hicks now appeals.

_____

[1]Hicks was convicted of violations of 18 U.S.C. § 1951 (armed robbery affecting interstate commerce); 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime); and 18 U.S.C. § 2 (aiding and abetting).

**DISCUSSION**

Motion to Suppress

"In reviewing the district court's denial of a motion to suppress, we accept the court's factual findings unless they are clearly erroneous and consider the evidence in the light most favorable to the government." See United States v. Gordon, No. 98-2100, 1999 WL 203154, at *2 (10th Cir. Apr. 12, 1999). "The ultimate question of whether a search and seizure were reasonable under the Fourth Amendment is a question of law we review de novo." Id.

Hicks contends that the officers lacked reasonable suspicion to make the initial investigatory stop. He maintains that there was no evidence that he or anyone in his car had fired a weapon that night, or that he had committed any traffic violation that would justify a traffic stop. Hicks submits that as a result, the officers had no reasonable suspicion to believe that Hicks had been, was, or was about to be engaged in criminal activity, much less did the officers have probable cause to arrest him. Because his arrest was unlawful, Hicks argues, the fruits of the search of his vehicle and his subsequent statement to the police should have been suppressed.

In contrast, the district court found at Hicks' motion to suppress hearing that the police did have reasonable suspicion to stop Hicks' vehicle. The court found that Officer Jenkins saw Hicks' vehicle in the vicinity of gunshots; that

- 4 -

Hicks' car sped away from the location; that people were running from the vehicle and the area; and that the car was stopped within a few minutes in the same general area as the shooting. The district court further found that the occupants of Hicks' car were properly subjected to a patdown search, in light of the fact that shots had been fired. Likewise, the court found that the protective sweep search of the vehicle was justified for safety reasons, and that his arrest was lawful based upon the officers' discovery of the weapon. Finally, the court ruled that Hicks' consent to search his apartment was valid, and that his statements to police came after he had been read his Miranda rights and showed no sign of coercion.

In United States v. Henning, 906 F.2d 1392 (10th Cir. 1990), modified on other grounds by United States v. Moore, 958 F.2d 310 (10th Cir. 1992), we ruled that "'[a]n investigative detention is justified where specific and articulable facts and rational inferences from those facts give rise to reasonable suspicion that a person has committed or is committing a crime.'" Id. at 1395 (quoting United States v. Espinosa, 782 F.2d 888, 890 (10th Cir. 1986)). Henning is controlling, as its facts are analogous to the instant case.

In Henning, police officers were investigating gang activity near a bar when they heard a gunshot 300 to 400 yards away. Moments later, they observed a vehicle emerge from the general area of the gunshot, make a "California stop"

at an intersection, and then speed away. There was no other traffic in the area. Henning, 906 F.2d at 1395-96. The officers pursued the vehicle and pulled it over. When they asked Henning to exit the vehicle, an automatic weapon fell to the ground. The officers subjected Henning to a patdown search, which revealed another gun, and arrested him. A search of his vehicle incident to his arrest revealed a cache of drugs and firearms. See id. at 1394-95.

Henning argued on a motion to suppress that the initial stop was not supported by probable cause. See id. at 1395. We upheld the district court's ruling that the initial stop was justified under the circumstances, reasoning that "[t]rained law enforcement officers could not reasonably be expected to simply stand by and ignore the potential significance such a fact pattern presents . . . ." Id. at 1396.

This case presents a remarkably similar fact pattern. Here, Officer Jenkins heard gunshots and observed a blue GM car speed away from the scene, with no other traffic in the parking lot area. Although Jenkins briefly lost sight of the vehicle, he pulled it over moments later in the same general area as the shooting. Under the circumstances, Jenkins had specific and articulable facts which, together with the rational inferences to be drawn therefrom, provided him and the other officers with reasonable suspicion that the occupants of the blue GM had

committed or were committing a crime. Accordingly, the officers' initial stop of the vehicle was permissible under the Fourth Amendment.

In addition, it was not unreasonable under the circumstances for the officers to execute the stop with their weapons drawn.

> While Terry stops generally must be fairly nonintrusive, officers may take necessary steps to protect themselves if the circumstances reasonably warrant such measures. The use of guns in connection with a stop is permissible where the police reasonably believe the weapons are necessary for their protection.

United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993) (internal quotations and alterations omitted). Given that gunshots had been fired minutes before, the officers here were reasonably concerned for their safety, and were justified in drawing their weapons and in ordering the passengers out of the vehicle. See id. at 1463.

Likewise, even though the officers had already frisked the occupants for weapons and knew that none of them was armed, under the circumstances, they were justified in handcuffing the defendants while the officers conducted a protective sweep of the car. See United States v. Shareef, 100 F.3d 1491, 1507 (10th Cir. 1996) (handcuffing of defendants was justified until all defendants were secured, and for reasonable time thereafter while officers conducted protective sweeps of cars and assessed situation).

Thus, the officers' initial stop, frisk, and protective sweep search of the vehicle in this case were constitutional, and the items from Hicks' person and the car were lawfully seized. Additionally, because his arrest was lawful, his subsequent statements to the police should not have been suppressed as the product of an unlawful arrest.

Witnesses' Testimony

Hicks was convicted largely on the testimony of three accomplices, Alonzo Nolen, Clyde McShan, and Sheryl Murphee. All three witnesses testified against Hicks pursuant to plea agreements with the government. Hicks argues on appeal that these witnesses' testimony violated 18 U.S.C. § 201(c)(2). Hicks did not argue this below, and in any event, the issue was resolved against his position in United States v. Singleton, 165 F.3d 1297 (10th Cir. 1999).

Accordingly, the judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge