DANIEL KELLY, J. (concurring).
 

 ¶ 38 Mr. Grandberry tells us he did not "carr[y] a concealed and dangerous weapon" when he placed a handgun in his vehicle's glove compartment.
 
 See
 

 Wis. Stat. § 941.23
 
 (2). This is so, he says, because of a statute that exempts handguns from the type of firearms one may not place in a vehicle. Today, the court concludes Mr. Grandberry was wrong-he did carry a concealed and dangerous
 weapon, and no statute excused his actions. Therefore, his conviction was and is sound. And I agree with that.
 

 ¶ 39 But in reaching that conclusion, we created unnecessary ambiguity about what it means to "carry" a weapon. Whereas that concept bore only one meaning before today, now it bears two-one for measuring the propriety of vehicle searches under the constitution, and another for espying a violation of
 
 Wis. Stat. § 941.23
 
 (2) (the "Concealed Carry Statute"). This is both unnecessary and unwise.
 

 ¶ 40 The Concealed Carry Statute's proscription is clear, and the process of determining whether Mr. Grandberry violated it covers well-travelled ground. The statute says "[a]ny person, other than one of the following, who carries a concealed and dangerous weapon is guilty of a Class A misdemeanor."
 
 Wis. Stat. § 941.23
 
 (2). All agree that Mr. Grandberry did not fit within any of the exceptions, so we next
 inquire into what it means to "carry" a weapon. The Concealed Carry Statute provides the answer: " 'Carry' has the meaning given in s. 175.60(1)(ag)." § 941.23(1)(ag). Following this cue, we find in the referenced section that " '[c]arry' means to go armed with."
 
 Wis. Stat. § 175.60
 
 (1)(ag).
 

 ¶ 41 We have a long history with the phrase "to go armed with" as it relates to the Concealed Carry Statute. Nearly a century ago we decided, as a matter of law, that a person is armed when he has a firearm "within reach."
 
 Mularkey v. State
 
 ,
 
 201 Wis. 429
 
 , 432,
 
 230 N.W. 76
 
 (1930) ("[T]he driver of an automobile goes armed, within the meaning of section 340.69, Stats.,
 
 [
 

 1
 

 ]
 
 when he has a dangerous weapon within reach on a shelf in back of his seat." (citations omitted) ). We said essentially the same thing in
 
 State v. Asfoor
 
 ,
 
 75 Wis. 2d 411
 
 , 433-34,
 
 249 N.W.2d 529
 
 (1977), stating that " 'going armed' meant that the weapon was on the defendant's person or that the weapon must have been within the defendant's reach." We confirmed this understanding of the phrase in
 
 State v. Fry
 
 , another case involving a handgun in a vehicle's glove compartment.
 
 131 Wis. 2d 153
 
 , 182,
 
 388 N.W.2d 565
 
 (1986) ("The elements of the crime of carrying a concealed weapon are: (1) the defendant had a dangerous weapon on his person or within his reach...." (citation omitted) ),
 
 overruled on other grounds by
 

 State v. Dearborn
 
 ,
 
 2010 WI 84
 
 ,
 
 327 Wis. 2d 252
 
 ,
 
 786 N.W.2d 97
 
 .
 

 ¶ 42 We now arrive at the end of the definitional chain in which "carry" means "go armed with," and "go armed with" means to have a weapon "within reach." A weapon is "within reach" if it is in a vehicle's passenger compartment. We know this on no less an authority than the United States Supreme Court. In describing the permissible scope of a warrantless search incident to arrest, the Court said: "Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].' "
 
 New York v. Belton
 
 ,
 
 453 U.S. 454
 
 , 460,
 
 101 S.Ct. 2860
 
 ,
 
 69 L.Ed.2d 768
 
 (1981) (quoting
 
 Chimel v. California
 
 ,
 
 395 U.S. 752
 
 , 763,
 
 89 S.Ct. 2034
 
 ,
 
 23 L.Ed.2d 685
 
 (1969) ),
 
 abrogated on other grounds by
 

 Arizona v. Gant
 
 ,
 
 556 U.S. 332
 
 , 343,
 
 129 S.Ct. 1710
 
 ,
 
 173 L.Ed.2d 485
 
 (2009). Some courts include "the hatchback or rear hatch area of a vehicle" within the meaning of "passenger compartment," so long as "an occupant could have reached [that] area while
 inside the vehicle."
 
 United States v. Stegall
 
 ,
 
 850 F.3d 981
 
 , 985 (8th Cir. 2017) (quoted source omitted). The rear cargo area of an SUV may also fall in that category.
 
 See
 

 United States v. Olguin-Rivera
 
 ,
 
 168 F.3d 1203
 
 , 1205 (10th Cir. 1999) ;
 
 see also
 

 United States v. Henning
 
 ,
 
 906 F.2d 1392
 
 , 1396 (10th Cir. 1990) ("Where, ... the vehicle contains no trunk, the entire inside of the vehicle constitutes the passenger compartment and may be lawfully searched.").
 

 ¶ 43 This last definitional step is where we created ambiguity. We said that what is "within reach" for Fourth Amendment purposes is something different from what is "within reach" for purposes of the Concealed Carry Statute. The court offers two reasons for its belief that these are "entirely separate concepts."
 
 See
 
 majority op., ¶ 29. First, it says they are substantively
 different because the court decides one, while the jury decides the other. The second is just a matter of rhetoric. Literally. The court chose synonymous phrases to describe the same concept and then asserted the synonyms created a substantive difference. I'll address each of these reasons in turn.
 

 ¶ 44 "Within reach," the court said, is a question of law in the Fourth Amendment context, while in the context of the Concealed Carry Statute it is a question of fact.
 
 Id.
 
 , ¶ 25. Therefore, the court concluded they mean different things because the court decides the former and juries decide the latter.
 
 See
 

 id.
 
 Get it? I don't. And I don't think the court does either. Whether it is a question of law or a question of fact, both questions address precisely the same consideration: Can a person reach the firearm? The length of a person's arm doesn't change because a jury measures it instead of a judge. The only real significance presented by the different contexts is that one deals with
 a potentiality and the other with the resolution of the potentiality. Here is what I mean.
 

 ¶ 45 The lawful scope of a warrantless search incident to an arrest is defined by a potentiality, to wit, the space into which a person could conceivably reach to retrieve a weapon. The purpose of such searches is " 'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence."
 
 Belton
 
 ,
 
 453 U.S. at 457
 
 ,
 
 101 S.Ct. 2860
 
 (quoting
 
 Chimel
 
 ,
 
 395 U.S. at 763
 
 ,
 
 89 S.Ct. 2034
 
 ). It is the danger created by an arrestee's potential access to a weapon that justifies the search. The Supreme Court emphasized this justification in
 
 Gant
 
 , in which it rejected a reading of
 
 Belton
 
 that allowed vehicle searches even when there was no reasonable chance the arrestee could access the passenger compartment: "Accordingly, we reject this reading of
 
 Belton
 
 and hold that the
 
 Chimel
 
 rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search."
 
 Gant
 
 ,
 
 556 U.S. at 343
 
 ,
 
 129 S.Ct. 1710
 
 ,
 
 173 L.Ed.2d 485
 
 (2009) ;
 
 accord
 

 Dearborn
 
 ,
 
 327 Wis. 2d 252
 
 , par. 29,
 
 786 N.W.2d 97
 
 .
 

 ¶ 46 The Supreme Court's concern is entirely functional, and is focused on the physical reality that a quick movement within the passenger compartment could put a weapon in the suspect's hand. The Court has decided, as a matter of law, that the entirety of a vehicle's passenger compartment can be reached by such a movement. Presumably, it had a good basis for making that determination. If it did not, we would have to conclude that the Court's understanding of the Fourth Amendment in this context has its roots in a
 factual fallacy. Nothing suggests we ought to entertain that possibility, so I must conclude that the Court truly meant that a firearm in a vehicle's passenger compartment is within an occupant's reach.
 

 ¶ 47 Now for the court's rhetorical distinction between "within reach" and "within reach." The court says the federal judiciary "describe[s] the area subject to a warrantless search incident to arrest as the arrestee's 'grab area,' " majority op., ¶ 24 (quoting
 
 United States v. Gandia
 
 ,
 
 424 F.3d 255
 
 , 261 (2d Cir. 2005) ), whereas our court uses "within reach" to describe the area subject to the Concealed Carry Statute. And then the court says "Grandberry and the concurrence fail to recognize the important distinctions between these terms."
 
 Id.
 
 , ¶ 25. Well, that much is certainly true. But I take comfort in the fact that the
 
 Belton
 
 court-upon which the
 court relies for its rhetorical distinction-shares the same purported failure.
 
 Belton
 
 said that "the passenger compartment of an automobile" is subject to search because it is "within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].' "
 
 Belton
 
 ,
 
 453 U.S. at 460
 
 ,
 
 101 S.Ct. 2860
 
 (quoted source omitted). This is the actual sentence in which the court says it discovered a substantive difference between "grab area" and "within reach."
 
 See
 
 majority op., ¶ 24.
 

 ¶ 48 The problem with the court's discovery is twofold. First, there is not even a theoretical difference between "grab area" and an area that is "within reach." To conclude otherwise would be to say that one may grab something beyond one's reach, or that one may reach something one cannot grab. The second problem is grammatical. The court reads
 
 Belton
 
 as using "grab" to define an area. That's not what
 
 Belton
 
 was doing. It was describing what a suspect might
 
 do
 
 in an
 
 already defined
 
 area-to wit, "grab a weapon or evidentiary ite[m]."
 
 Belton
 
 ,
 
 453 U.S. at 460
 
 ,
 
 101 S.Ct. 2860
 
 (quoted source omitted). How did the
 
 Belton
 
 court define where that might be done? It said a weapon might be grabbed from "within the area into which an arrestee might reach."
 

 Id.
 

 Or, with the judicious use of one's editing pencil, this definition can be shortened-without losing a jot or tittle of meaning-to "within ... reach." So the court's discovery of a substantive difference between "within reach" and "within reach" is both illogical and ungrammatical. I am confident the
 
 Belton
 
 court would find no "important distinctions between these terms."
 
 See
 
 majority op., ¶ 25.
 

 ¶ 49 The court also faults me (and Mr. Grandberry) for not substantively distinguishing "within reach" (Fourth Amendment) from "within reach" (Concealed Carry Statute) based on the separate lines of cases in which the concept has been used.
 
 See
 

 id.
 
 , ¶ 27. I acknowledge that I find this to be a distinction without a difference, but I don't think it's a fault. The Concealed Carry Statute concerns itself with the same physical reality addressed by
 
 Belton
 
 and
 
 Gant
 
 . In the Fourth Amendment context, the concern is whether there
 
 could be
 
 a weapon within reach. In the Concealed Carry Statute context, the concern is whether there actually
 
 was
 
 a weapon within reach.
 

 ¶ 50 This just means that the jury resolves as a factual matter the potentiality described by our Fourth Amendment jurisprudence. The Fourth Amendment defines the outer parameters of what could be lawfully within a defendant's reach; the jury decides whether a specific defendant could actually reach that location under the circumstances of a specific case. If he could, then the weapon was "within reach" within the meaning of the Concealed Carry Statute. However, if circumstances
 arise that make it impossible for a defendant to obtain a weapon from the area described by
 
 Belton
 
 and
 
 Gant
 
 , the jury may acquit. The defendant attempted this very gambit in
 
 Fry
 
 . He argued that the glove compartment in which he placed his gun would not open when the passenger seat was occupied, so the gun was not within reach.
 
 See
 

 id.
 
 ,
 
 131 Wis. 2d at 176
 
 ,
 
 388 N.W.2d 565
 
 . The jury convicted him anyway, and we found no error.
 

 Id.
 

 at 156
 
 ,
 
 388 N.W.2d 565
 
 . Nor did we address the concealed-carry question as anything other than a particularized inquiry into the relationship between the weapon and the area described by
 
 Belton
 
 and
 
 Gant
 
 .
 

 ¶ 51 Mr. Grandberry's concerns have a good foundation, and we shouldn't have dismissed them as abruptly as we did. The court said that "[a]ccording to Grandberry, a person who transports a loaded handgun in a motor vehicle that lacks a trunk separate
 from the passenger area (e.g., a minivan, SUV, hatchback, or station wagon) complies with the Safe Transport Statute yet is always in violation of the Concealed Carry Statute." Majority op., ¶ 22. We then concluded that this would be a compelling argument but for the lack of any "statute, case law, or regulation" to support it.
 
 Id.
 
 , ¶ 23. But in actuality
 
 we
 
 are the ones who lack a statute, opinion, or regulation to answer Mr. Grandberry's concern. No law defines "within reach" more narrowly in the concealed-carry context than in the Fourth Amendment context. Consequently, if Mr. Grandberry encases a handgun and puts it in the furthest corner from the driver's seat in an SUV, he is at risk of prosecution for violating the Concealed Carry Statute.
 

 ¶ 52 Ultimately, the court doesn't finish the job it set out for itself. It proposed that the concept of "within reach" could describe one area for purposes of the Fourth Amendment, and a different area for purposes
 of the Concealed Carry Statute. But the court went no further than opining on why it believes the concept
 
 should
 
 describe different areas. That is to say, the opinion doesn't describe what the difference actually
 
 is
 
 . In fact, we affirmatively refused to say what it might be. Instead, we chillingly advised the people of Wisconsin to risk criminal liability on multi-factor tests and common sense: "[C]itizens and factfinders can find guidance in our precedent and common sense, and should consider factors such as the location of the dangerous weapon in the motor vehicle relative to the location of its possessor, the motor vehicle's size, and the possessor's ability to reach the dangerous weapon while in the motor vehicle."
 
 Id.
 
 , ¶ 31 (footnote omitted). Anent the last clause of this formulation: How does "ability to reach the dangerous weapon while in the motor vehicle" differ from "within the area into which an arrestee might reach"? Common sense will utterly exhaust itself trying to find any room between the two, and we aren't saying what the difference might be. And yet, a person placing a firearm in a vehicle hazards criminal prosecution if he can't figure out a distinction that we refuse to describe.
 

 ¶ 53 The Concealed Carry Statute is not unconstitutionally vague, but only because its proscription reaches the entirety of the passenger compartment. This is a readily-ascertainable prohibition. But if criminality depends on a non-exclusive list of variables like the size of a vehicle, the placement of a weapon, and "common sense," then we have denied the people of Wisconsin the ability to identify with any certainty what the statute prohibits with respect to vehicles. So, ironically, in the process of explaining why the statute is not unconstitutionally vague, we have made it so.
 
 See
 

 Kolender v. Lawson
 
 ,
 
 461 U.S. 352
 
 , 357,
 
 103 S.Ct. 1855
 
 ,
 
 75 L.Ed.2d 903
 
 (1983)
 

 ("[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." (citations omitted) ).
 

 *
 

 ¶ 54 I agree with the court's mandate because Mr. Grandberry could comply with both the Concealed Carry Statute and
 
 Wis. Stat. § 167.31
 
 (2)(b) (the "Safe Transport Statute"). As we have described elsewhere, the Safe Transport Statute (as relevant here) simply exempts handguns from a prohibition against placing loaded firearms in a vehicle.
 
 Wis. Carry, Inc. v. City of Madison
 
 ,
 
 2017 WI 19
 
 , ¶¶ 12, 47-51,
 
 373 Wis. 2d 543
 
 ,
 
 892 N.W.2d 233
 
 (referring to the "Safe Transport Statute" as the "Vehicle Statute"). Nothing about its terms excuses the individual from complying with
 all other applicable laws. So, although Mr. Grandberry did not violate the Safe Transport Statute when he placed his handgun in the glove compartment, he most assuredly violated the Concealed Carry Statute.
 

 ¶ 55 And now, a postscript of sorts: Given Wisconsin's proud hunting heritage, it's worth noting the Concealed Carry Statute's shockingly broad proscriptions. In amending our statutes to offer the opportunity to carry concealed handguns, the legislature simultaneously made it unlawful to carry a concealed rifle or other long gun. This may have been inadvertent, but we give effect only to what the legislature does, not what it tried to do.
 
 [2]
 
 The Concealed Carry
 Statute prohibits an individual from carrying a "dangerous weapon."
 
 Wis. Stat. § 941.23
 
 (2). A "[d]angerous weapon" is, inter alia, "any firearm, whether loaded or unloaded."
 
 Wis. Stat. § 939.22
 
 (10). There is no exception for rifles, shotguns, or other long guns. A person can, of course, obtain a permit to carry a concealed weapon, but they are available only for handguns, electric weapons, and billy clubs.
 
 Wis. Stat. § 941.23
 
 (2)(d) (2015-16);
 
 Wis. Stat. § 175.60
 
 (1)(j) (2015-16). So if you hunt, you may not put your rifle in a case. And if you put your rifle in the passenger compartment of a vehicle, you must display it in such a way that it is readily observable.
 
 Mularkey
 
 ,
 
 201 Wis. at 432
 
 ,
 
 230 N.W. 76
 
 ("If the weapon is hidden from ordinary observation it is concealed. Absolute invisibility to other persons is not indispensable to concealment. The test is, was it carried so as not to be discernible by ordinary observation." (citation omitted) ). The State is aware of this overbreadth, which is why it instructs game wardens to ignore the Concealed Carry Statute as it relates to hunters and their long guns. In the course of arguing this case, the State acknowledged that "as a practical matter, the DNR does not treat rifles in a case as 'concealed.' "
 

 ¶ 56 Finally, a post postscript. The Concealed Carry Statute also puts at risk all those who do not have concealed carry permits who nonetheless bring their handguns to shooting ranges. To comply with the statute, one would have to keep the handgun uncased at all times, and if placed in the passenger compartment of a vehicle, it would have to be situated so that it is readily observable.
 

 ¶ 57 Neither of these postscripts, however, affect Mr. Grandberry, so his conviction remains sound. Therefore, I concur and join the court's mandate.
 

 All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.
 

 Mularkey v. State
 
 ,
 
 201 Wis. 429
 
 , 432,
 
 230 N.W. 76
 
 (1930) cited additional cases from Texas purportedly using the "within reach" terminology:
 
 Leonard v. State
 
 ,
 
 56 Tex.Crim. 84
 
 ,
 
 119 S.W. 98
 
 (1909) ;
 
 Hill v. State
 
 ,
 
 50 Tex.Crim. 619
 
 ,
 
 100 S.W. 384
 
 (1907) ;
 
 Mayfield v. State
 
 ,
 
 75 Tex.Crim. 103
 
 ,
 
 170 S.W. 308
 
 (1914) ;
 
 DeFriend v. State
 
 ,
 
 69 Tex.Crim. 329
 
 ,
 
 153 S.W. 881
 
 (1913); and
 
 Garrett v. State
 
 ,
 
 25 S.W. 285
 
 (1894). None of these cases use the term "within reach."
 
 Defriend
 
 comes close to "within reach," but does not use that wording. It says:
 

 "[O]n or about his person," as used in our statutes in connection with the carrying a pistol, is meant that the pistol that is alleged to have been carried must have been within easy access of the person carrying it; that the pistol could have been secured with practically no effort on the part of the person charged.
 

 Id.
 

 ,
 

 153 S.W. at 882
 
 .